STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v. CHESTER OLIVER, DEFENDANT-RESPONDENT.

Argued June 7, 1967—Decided July 20, 1967.

40

*Mr. Richard S. Cohen,* Assistant County Prosecutor, argued the cause for appellant (*Mr. Edward J. Dolan,* Middlesex County Prosecutor, attorney).

*Mr. Morris Spritzer* argued the cause for respondent (*Messrs. Spritzer & Spritzer,* attorneys).

*Mr. Joseph A. Hoffman,* Assistant Attorney General, argued the cause for Attorney General of New Jersey, *amicus curiae* (*Mr. Arthur J. Sills,* Attorney General of New Jersey).

*Mr. Brendan T. Byrne,* Essex County Prosecutor, submitted a brief *amicus curiae* (*Mr. Barry H. Evenchick,* Assistant County Prosecutor, of counsel and on the brief).

*Mr. Leo Kaplowitz,* Union County Prosecutor, submitted a brief *amicus curiae* (*Mr. Anthony Luongo,* Assistant County Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

WEINTRAUB, C. J. Defendant Oliver was convicted of bookmaking in violation of *N. J. S.* 2A:112–3. The Appellate Division reversed because the trial court refused to order the State to disclose the identity of an informer. *State v. Oliver,* 92 *N. J. Super.* 228 (*App. Div.* 1966). We granted certification, 48 *N. J.* 143 (1966). The case was argued with *State v. Bacsko,* 50 *N. J.* 49 (1967), and *State v. Krempecki,* 50 *N. J.* 50 (1967), both decided today. which involve the same issue. In *Bacsko,* another part of the Appellate Division, in an unreported opinion, upheld the refusal to order disclosure. *Krempecki,* in which the trial court also refused to order disclosure, was not considered by the Appellate Division because we certified it before argument there.

Oliver was charged with making book between April 13 and May 27, 1964. The principal witness for the State was Trooper Walter T. Decker of the State Police, an undercover agent with its Gambling Squad. He testified to bookmaking activities by Oliver at a tavern in New Brunswick, owned by one Del Bono, on three dates prior to the day of a raid under a search warrant.

The State made no reference to an informer but the defense, on cross-examination of Decker, elicited the fact that on all three occasions prior to the day of the raid an informer was seated with him at the bar. The informer did not place a bet. Nor did Decker. We gather the informer accompanied Decker only because the informer was a familiar figure at the bar and hence his presence tended to shield Decker from the suspicion he might have generated as a stranger. The informer was not there to be a witness but rather to make Decker less conspicuous. The Appellate Division said that Decker testified "that upon comparing his observations with those of the informer they were in some respects not in accord" (92 *N. J. Super.*, at *p.* 240). We do not read his testimony to be that there was a conflict upon anything, but rather that since the informer did not concentrate upon evidence of bookmaking, he did not see or hear some of the things Decker noted. There is nothing to suggest the informer would have contradicted any material testimony of Decker.

▮ Defendant first contends the unnamed man was beyond the common-law informer privilege and its codification in *N. J. S. A.* 2A:84A–28,[1] see *State v. Burnett, 42 N. J.* 377,

---

[1] The statute reads:

"A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible. unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues."

380 (1964), because he acted for pecuniary reward and was paid not merely for what he knew but also to seek out violations in places accessible to him. The Appellate Division correctly held that neither fact took him beyond the privilege.

The privilege exists to secure a flow of vital information which can be had only upon a confidential basis. Not all such information comes from people of high motivation. The police must have the aid of men of lesser quality who respond to selfish inducements, including money. These men are needed for what they know, but also for what they can learn because of their associations. This is especially true with respect to crimes of a consensual nature as to which there is little likelihood that a victim will complain. See *Lewis v. United States,* 385 *U. S.* 206, 87 *S. Ct.* 424, 17 *L. Ed.* 2d 312, 316, *n.* 6 (1966), and *McCray v. State of Illinois,* 386 *U. S.* 300, 87 *S. Ct.* 1056, 18 *L. Ed.* 2d 62, 71 (1967). The informer, paid or not, is subject to risks of retaliation which a regular member of a police force need not fear and hence, whether paid or not, he comes within the protection of the privilege.

But we think the Appellate Division erred in holding that the State must disclose the identity of the informer. Here the informer played no part whatever in the criminal event. He did not bet, or induce defendant to accept a bet from anyone. Nor did the State attempt to get into the record of the trial anything the informer may have seen or said. It was the defense that brought out his presence at the scene, obviously to raise the immediate issue. But the defense was unable to show that the informer's testimony was necessary for a fair determination of the issues in the case. The defense could advance nothing more than an ungrounded hope that if the informer were called as a defense witness, he would say something which would somehow discredit the trooper and lead to an acquittal. We are not referred to any case which calls for a disclosure of a nonparticipant informer upon that rootless speculation.

In *Roviaro v. United States*, 353 *U. S.* 53, 77 *S. Ct.* 623, 1 *L. Ed. 2d* 639 (1957), the informer was a principal actor in the offense. He was the immediate party to the sale of the narcotics, and for a portion of the time he and the defendant were alone. Further the informer denied that he had ever seen the defendant when he was confronted with him. The Court did not say an informer must be revealed merely because he knows something about the criminal event. Rather the opinion reads (353 *U. S.*, at *p.* 62, 77 *S. Ct.*, at *p.* 628, 1 *L. Ed. 2d*, at *p.* 646) :

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

In holding that there the identity of the informer had to be revealed upon that balance, the Court stressed the prominence of the informer's role, the fact that his conversation with defendant was used by the prosecution, the nature of the defenses the circumstances affirmatively suggested might be available, and finally the testimony that the informer denied knowing defendant upon confrontation.[2]

---

[2] The Court said (353 *U. S.*, at *pp.* 64–65, 77 *S. Ct.*, at *pp.* 629–630, 1 *L. Ed. 2d*, at *p.* 647) :
"* * * Doe [the informer] had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car. The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide.
Finally, the Government's use against petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case. The only person, other than petitioner himself, who could controvert, explain or amplify Bry-

44

In *Rugendorf v. United States,* 376 *U. S.* 528, 84 *S. Ct.* 825, 11 *L. Ed.* 2d 887 (1964), defendant was convicted of knowingly receiving stolen fur pieces after their transportation in interstate commerce. The furs were found in the basement of his home. Defendant denied knowledge, and apparently suggested his brother, an admitted "fence" for stolen goods, who had a key to the house, might have placed the furs there while defendant was out of the State. The affidavit used in obtaining the search warrant said the informer claimed to have been in the basement and to have seen the furs. Conceivably he could have shed light on how the furs got there, and whether with defendant's knowledge. The majority rejected the claim that the informer should have been disclosed for the purpose of the trial, finding the request for disclosure related only to the motion to suppress the evidence seized under the search warrant. Nonetheless the majority opinion commented upon the claim and concluded that the defendant had not met his burden to establish the criteria of *Roviaro,* saying, 376 *U. S.,* at *pp.* 534–535, 84 *S. Ct.,* at *p.* 829, 11 *L. Ed.* 2d, at *pp.* 892–893:

"He relied entirely on suppression, which, if successful, would have ended the case. Failing in this, petitioner asserted, for the first time, in his reply brief in the Court of Appeals that the name of the single informant who saw the furs was vital both for the suppression hearing and for the defense at trial, because the informant alone knew whether he 'participated with persons other than the defendant' in placing the furs in the basement. Apparently this was an attempt to bring the facts of the case within Roviaro v. United States, 353 U. S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), where the informant had played a direct and prominent part, as the sole participant with the accused, in

son's report of this important conversation was John Doe. Contradiction or amplification might have borne upon petitioner's knowledge of the contents of the package or might have tended to show an entrapment.

This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. Moreover, a government witness testified that Doe denied knowing petitioner or ever having seen him before."

the very offense for which the latter was convicted. But there was not even an intimation of such a situation at the trial here. The necessity for disclosure depends upon 'the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' 353 U. S. 53, 62, 77 S. Ct. 623, 629, 1 L. Ed. 2d 639, 646. Petitioner did not develop any such criteria with reference to the merits of the case."

*McCray v. State of Illinois, supra,* 386 *U. S.* 300, 87 *S. Ct.* 1056, 1061, 18 *L. Ed. 2d* 62, 70, involved the refusal to disclose the informer's identity on a motion to suppress things seized on a search, but the Court discussed *Roviaro* and emphasized the special facts which there led to the holding that the informer should be revealed for the purposes of the trial:

"The *Roviaro* case involved the informer's privilege, not at a preliminary hearing to determine probable cause for an arrest or search, but at the trial itself where the issue was the fundamental one of innocence or guilt. The petitioner there had been brought to trial upon a two-count federal indictment charging sale and transportation of narcotics. According to the prosecution's evidence, the informer had been an active participant in the crime. He 'had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged.' "

The Court added significantly that (386 *U. S.,* at *p.* 311, 87 *S. Ct.,* at *p.* 1062, 18 *L. Ed. 2d,* at *p.* 70) :

"What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials."

Without stopping to consider factual nuances which may have contributed to the results, other cases in this area may be summarized in these general terms. Disclosure has been required where the informer was an actual party to the illegal transaction. *Portomene v. United States,* 221 *F. 2d* 582 (5 *Cir.* 1955) ; *People v. McShann,* 50 *Cal. 2d* 802, 330 *P. 2d* 33 (*Sup. Ct.* 1958) ; *People v. Durazo,* 52 *Cal. 2d* 354, 340 *P. 2d*

594, 76 *A. L. R. 2d* 257 (*Sup. Ct.* 1959). The cases are in conflict where the informer participated only to the extent of introducing the defendant to the officer to set the stage for the criminal transaction with the officer. Disclosure was denied in *United States v. Simonetti,* 326 *F. 2d* 614 (2 *Cir.* 1964); *United States v. Russ,* 362 *F. 2d* 843 (2 *Cir.* 1966), *cert.* denied 385 *U. S.* 923, 87 *S. Ct.* 236, 17 *L. Ed. 2d* 146 (1966); *United States v. Coke,* 339 *F. 2d* 183 (2 *Cir.* 1964); *United States v. Fredia,* 319 *F. 2d* 853 (2 *Cir.* 1963); *People v. Reed,* 21 *Ill. 2d* 416, 173 *N. E. 2d* 422 (1961), *cert.* denied 368 *U. S.* 990, 82 *S. Ct.* 606, 7 *L. Ed. 2d* 527 (1962); *Lee v. State,* 235 *Md.* 301, 201 *A. 2d* 502 (*Ct. App.* 1964). Holding the other way are *Gilmore v. United States,* 256 *F. 2d* 565 (5 *Cir.* 1958); *People v. Williams,* 51 *Cal. 2d* 355, 333 *P. 2d* 19 (*Sup. Ct.* 1958).

But as we have said, we know of no case holding that an informer must be revealed when he was no more than a witness to the criminal event. In *State v. Booker,* 86 *N. J. Super.* 175 (*App. Div.* 1965), an informer was with the narcotic agent when defendant approached the vehicle and himself initiated what resulted in a sale to the agent. The court held, and we think correctly, that "the mere fact that the informer was present does not take him out of the protection of the statute. Such presence is only one fact to be taken into consideration with all of the facts in determining whether 'disclosure of his identity is essential to assure a fair determination of the issues'" (*p.* 179). *Cf. Zaroogian v. United States,* 367 *F. 2d* 959 (1 *Cir.* 1966).

As *Roviaro* said in the excerpt quoted above, the problem calls for balancing the public interest in protecting the flow of information against the individual's right to a fair determination of the issues. The most the defendant can say here is that he hopes that the informer, if called by him, would somehow destroy the State's case. If that unsupported hope suffices, it is obvious that an informer could no longer serve as a cover or decoy. This is so because in virtually all such cases, the informer would likely be able to testify as to some-

thing within the direct or cross-examination of the officer, thus offering a possibility of contradicting him. Upon that sheer speculation, a demand for disclosure would be routinely made, not really with any expectation that defendant will call the informer, but rather to obtain the dismissal to which the prosecution would have to submit to honor its obligation to protect him.

In dealing with the informer privilege, we must be mindful of the ease with which the privilege would be destroyed if disclosure were required without a substantial showing of a need for it. So in *McCray v. State of Illinois, supra,* 386 *U. S.* 300, 87 *S. Ct.* 1056, 18 *L. Ed. 2d,* at *p.* 68, and *State v. Burnett,* 42 *N. J.* 377, 385 (1964), it was held that upon a hearing as to probable cause to search, the identity of the informer cannot be demanded on the mere chance that he will contradict the statements the officer attributed to him, and in *State v. Dolce,* 41 *N. J.* 422, 428–429 (1964), we held that a defendant may not call for disclosure of a participant-informer upon an unverified assertion of entrapment, adding that if a defendant makes that assertion under oath to obtain disclosure, he will be protected from the use of the statement at the trial. As said in *Miller v. United States,* 273 *F. 2d* 279, 281 (5 *Cir.* 1959), *cert.* denied, 362 *U. S.* 928, 80 *S. Ct.* 756, 4 *L. Ed. 2d* 747 (1960):

"* * * If the informer's relation to the acts leading directly to or constituting the crime may be assumed from a fertile imagination of counsel, the Government in practically every case would have to prove affirmatively that the informant had not done any such likely acts. Having done that, all would be revealed and the informer privilege, deemed essential for the public interest, for all practical purposes would be no more."

We recognize of course a remote possibility that an informer's testimony might serve some defendant. The dilemma is that ordinarily a defendant cannot know unless the informer is made available, while to require him to be made available will end the prosecution and deny society the services of informers. We asked counsel for their views as to

whether the knot could be cut by committing to a trial judge the power to question an informer privately or to consider a written statement of the informer, so limited as to preserve his anonymity, to determine whether his testimony would aid the defendant. We doubt that such a device could be used without revealing the informer or making the danger of his disclosure a forbidding possibility. Not infrequently an informer is known only to a single police officer and would not consent to a disclosure of his identity to a superior officer or even the prosecutor.

Perhaps a situation may arise in which some such procedure would be feasible and warranted. At the moment a choice seems unavoidable between a disclosure of the witness-informer in all cases or in none at all. A policy-decision must be made and it must rest upon probabilities. In those terms the risk of loss to defendants is pure conjecture, while the loss to society in its efforts to cope with crime would be real and substantial. The balance contemplated by *Roviaro* must be struck in favor of law and order. *Cf. State v. La-Fera*, 42 *N. J.* 97, 107–108 (1964).

We agree with the Appellate Division's treatment of the remaining issues.

The judgment of the Appellate Division is reversed and the judgment of conviction is affirmed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and HALL—5.

*For affirmance*—None.