834 A.2d 433 (2003)
364 N.J. Super. 23
STATE of New Jersey, Plaintiff-Respondent,
v.
Andre WILLIAMS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 9, 2003.
Decided November 6, 2003.
*434 Yvonne Smith Segars, Public Defender, attorney for appellant (Jack Gerber, Designated Counsel, of counsel and on the brief).
Peter C. Harvey, Attorney General, attorney for respondent (Analisa Sama Holmes, Deputy Attorney General, of counsel and on the brief).
Before Judges STERN, LEFELT and PAYNE.
The opinion of the Court was delivered by PAYNE, J.A.D.
Defendant Andre Williams was convicted of third-degree possession of cocaine, following trial on third-degree charges of possession of a controlled dangerous substance (cocaine), N.J.S.A. 2C:35-10a; possession of cocaine with the intent to distribute it, N.J.S.A. 2C:35-5a(1) and (3); and possession of cocaine with the intent to distribute it within 1,000 feet of a school, N.J.S.A. 2C:35-7; and on a second-degree charge of possession of cocaine with the intent to distribute it within 500 feet of a public facility, N.J.S.A. 2C:35-7.1. He appeals from that conviction and from an extended term sentence imposed upon him of seven years.
On appeal, defendant raises the following arguments:
POINT 1 THE CONVICTION MUST BE VACATED AS THE STATE DID NOT MEET ITS BURDEN OF ADVISING THE DEFENDANT OF HIS CONSTITUTIONAL RIGHTS PURSUANT TO MIRANDA v. ARIZONA.

POINT 2 THE CONVICTION MUST BE VACATED AS THE FAILURE TO PROPERLY ADMINISTER THE MANDATED MIRANDA RIGHTS WITHIN A CUSTODIAL *435 SETTING DEPRIVED THE DEFENDANT OF HIS CONSTITUTIONAL RIGHTS AND THEREFORE ALL STATEMENTS MADE IN VIOLATION OF THOSE RIGHTS SHOULD HAVE BEEN SUPPRESSED.
POINT 3 THE STATEMENTS MADE BY THE DEFENDANT WERE THE RESULT OF INTERROGATION AND NOT HAVING BEEN ADVISED OF HIS MIRANDA WARNINGS. THE COURT ERRED IN RULING THAT THEY WOULD BE OTHERWISE ADMISSIBLE AT TRIAL.
POINT 4 THE CONVICTION MUST BE VACATED AS THE DRUGS CONFISCATED FROM THE DEFENDANT WERE "FRUITS OF THE POISONOUS TREE."
POINT 5 THE DEFENDANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL BECAUSE THE COURT INCORRECTLY RESPONDED TO THE JURY'S QUESTION RESULTING IN THE CUMULATIVE EFFECT OF THE ERRORS.
POINT 6 THE COURT ABUSED ITS DISCRETION IN IMPOSING A DISCRETIONARY EXTENDED TERM.
In a supplemental brief, defendant raises the following additional issue:
POINT 7 THE COURT ERRED IN NOT ORDERING THE STATE TO DISCLOSE THE IDENTITY OF THE CONFIDENTIAL INFORMANT.
Although Points One through Four of defendant's brief nominally raise issues of self-incrimination under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), their principal thrust lies in a challenge to the trial court's determination, following a suppression hearing, to admit evidence consisting of the drugs seized in a search of defendant's person incident to booking. We address this issue first.

I.
Evidence at the suppression hearing established that, at approximately 10:00 p.m. on September 20, 2000, an unnamed confidential informant, seeking a favorable disposition of a pending municipal charge of possession of drug paraphernalia, approached Dunellen Police Sergeant Robert Guiliano and informed him that she could arrange a drug transaction with a man named Andre. In the three weeks prior to September 20, the informant had given unspecified information to the Dunellen police on seven to ten occasions that allegedly had led to the institution of investigations and to drug related arrests of other individuals by other law enforcement agencies. Approximately two weeks prior to September 20, the informant had approached the Dunellen police with the same information that she conveyed on September 20. However, the police lacked the staff to conduct an investigation on the earlier date. Thus, the unsolicited tip by the informant on September 20 was the first upon which the Dunellen police had acted.
Following receipt of the tip, Guiliano assigned Officer Patrick Jacques to the investigation. He accompanied the informant to the Dunellen train station, located in a low crime area in close proximity to the police station, where she used a public telephone to call "Andre," confirmed that she was known to him, and placed an order for delivery to the train station by him of two twenty-dollar "pieces." "Andre" stated that they would be delivered shortly. The call was overheard by Jacques, who *436 shared the telephone receiver with the informant. A stake-out was thereupon established by Jacques.
Within fifteen minutes, a green Mazda arrived at the train station and parked near a pedestrian tunnel leading beneath the tracks to another parking lot. The informant identified the passenger of the car as Andre. The identification was solely dependent upon the informant, since she had not provided the police with Andre's last name, and she had not given a description of him (other than the fact he was a black male), his clothes, his mode of transportation, or any potential companions. Back-up vehicles, driven by Guiliano and Officer Casale, were called in.
Defendant was then observed leaving the Mazda and standing on the platform, looking around. As Guiliano passed him, defendant slowly walked a short distance into the pedestrian tunnel under the tracks. When Guiliano disappeared from view, defendant turned around in the tunnel, exited it, walked past Guiliano (who had returned to the site), re-entered the Mazda, and sat in the passenger seat. The officers conceded that no conduct of a suspicious nature occurred.
The driver of the Mazda, later identified as Willie Goggins, then sought to drive off. However, he was prevented from doing so by the police, who boxed the Mazda with their own vehicles, with Guiliano blocking movement forward and Casale blocking movement backward. The two occupants of the car were then approached by the police, were informed that a narcotics investigation was taking place and were assured that "if everything checked out," they could leave shortly.
In response to an inquiry by Jacques, defendant gave his first name as Andre and produced a valid Union County identification card containing information that was relayed by radio to headquarters for a warrant check. Goggins, on request by Guiliano, was unable to produce a driver's license. He was therefore asked to leave the car. Miranda warnings were then given orally to both Goggins and defendant by Guiliano in the presence of Jacques. A subsequent request by Guiliano to Goggins for consent to search the car was granted and, on inspection, two foil packets containing suspected cocaine were found. Both Goggins and defendant were then arrested and transported to headquarters in Casale's car. In the meantime, the officers were informed of two outstanding warrants against defendant for contempt of court arising out of traffic violations.
Upon arrival at headquarters, Miranda warnings were again administered by Casale and Jacques, Miranda cards were initialed and signed, and searches of the defendants were conducted. Casale's search of Goggins disclosed nothing. Jacques' search of defendant disclosed two sandwich bags containing, respectively, 10 and 7 foil packets of suspected crack cocaine, which had been secreted in defendant's sweat pants. He was also found to possess $151 in various denominations.
Following the suppression hearing, the trial judge ruled evidence consisting of the two packets of cocaine initially found in the Mazda to be inadmissible under State v. Johnson, 68 N.J. 349, 353-54, 346 A.2d 66 (1975), because Guiliano admitted that he had not advised Goggins of his right to refuse consent to Guiliano's requested search. Since no other evidence linked Goggins to any crime, charges against him were dismissed. However, the court found that defendant's arrest could be independently justified on the basis of the existing warrants lodged against hima finding that is not contested on appeal.
The court ruled that the remaining evidence against defendant, consisting of the *437 cocaine and money found on him during the search at police headquarters, was admissible. In this connection, the trial court found that the detention of Goggins and defendant, based upon evidence supplied by a confidential informant, constituted a seizure under standards set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) that could be justified only by a reasonable suspicion on the part of the police that a crime was being or was about to be committed. See also United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621, 628-29 (1981) (extending Terry's holding to investigatory stops). The court then ruled that, when the totality of the circumstances was considered, the information supplied by the informant could be considered to be reliable, and that it provided sufficient grounds to justify the detention of the two men by the police. The court stated:
The C.I. in this case did have a stated history of previous reliability and accurate narcotics information in the past. Officer Guiliano testified that the C.I. in this case had on approximately seven to ten prior occasions provided reliable and accurate narcotics information to other agencies through the Dunellen Police Department. Buttressing the C.I.'s credibility, the police officer, Officer Jacques, was with the C.I. as the C.I. made the communication to the defendant Andre, a person whom the C.I. obviously knew from the past based upon the content of the C.I.'s conversation with him. Further, that the C.I. knew him to be a source for drugs, again, based upon the forthright ... and direct content and nature of the telephone conversation which was overheard by Patrolman Jacques. It was a short conversation dealing with drugs.
Furthermore, the meeting arranged in the phone conversation was corroborated by the ensuing activities of the defendant Andre by shortly thereafter his arriving at the prearranged meeting location.
Based upon the totality of circumstances it is clear that the police officers had a reasonable and articulable suspicion to support the investigatory stop of the motor vehicle the defendants were in.
We concur with the trial court's determination in this case that the questioning of defendant and his companion by the police at the train station constituted a seizure under the fourth amendment as recognized in Terry, since as the result of the words and conduct of the investigating officers, it was clear that neither was free to leave until the police's investigation was complete. State v. Rodriguez, 172 N.J. 117, 125-26, 128-29, 796 A.2d 857 (2002); State v. Davis, 104 N.J. 490, 497-98, 517 A.2d 859 (1986) (finding a Terry stop to have occurred on the basis of evidence that a police officer blocked the path of defendant's vehicle with his car and the testimony of a police officer that defendant and his companion were not free to leave because he was conducting "somewhat" of an investigation). Although Terry does not require a showing of probable cause as justification for a brief investigative seizure, the police must be able to "point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, supra, 392 U.S. at 21-22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. In the present case, those facts consisted only of the information supplied by the confidential informant, since she alone had prior knowledge of "Andre" and his alleged drug dealings, set up the proposed sale and identified defendant to the police as the projected seller when he arrived at the station in the green Mazda. No identifying information susceptible to confirmation *438 was supplied by the informant, and no suspicious conduct on the part of defendant or his companion occurred. None of the police officers had prior knowledge of "Andre" or his allegedly illegal doings. Thus the constitutionality of the police's conduct depends solely upon the reliability and sufficiency of the information that the informant provided.
The United States Supreme Court has held that the reliability of an informant's tip must be analyzed in light of the totality of the circumstances, a standard that the New Jersey Supreme Court has adopted in construing article I, paragraph 7 of New Jersey's Constitution. See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983); State v. Novembrino, 105 N.J. 95, 122, 519 A.2d 820 (1987). The informant's "veracity" or "reliability" and her "basis of knowledge," factors previously considered independently under the United States Supreme Court's decisions in Aguilar v. Texas[1] and Spinelli v. United States,[2] are the factors generally considered to be highly relevant to that analysis. See State v. Smith, 155 N.J. 83, 93-95, 713 A.2d 1033 (1998), cert. denied sub nom. New Jersey v. Smith, 525 U.S. 1033, 119 S.Ct. 576, 142 L. Ed.2d 480 (1998). In determining the overall reliability of a tip, compensation for a deficiency in one element of proof may exist as the result of the strength of the other element. Id. at 93, 713 A.2d 1033.
Utilizing an Aguilar/Spinelli analysis, our Supreme Court has held previously that past satisfactory experiences in which the informant produced information leading to arrests and convictions was sufficient to establish the informant's veracity. Smith, supra, 155 N.J. at 94, 713 A.2d 1033; State v. Ebron, 61 N.J. 207, 212-13, 294 A.2d 1 (1972). However, in its post-Gates decision in Smith, the Supreme Court held in a probable cause context:
Under the totality of the circumstances test, past reliability remains probative of veracity, although its weight in the ultimate determination of probable cause may vary with the circumstances of each case. For example, in Novembrino, supra, we recognized that an informant's veracity could be supported by information that the informant has "proven reliable in several investigations (with information he provided)." 105 N.J. at 123, 519 A.2d 820. Nonetheless, a few past instances of reliability do not conclusively establish an informant's reliability.
[Smith, supra, 155 N.J. at 94, 713 A.2d 1033.]
In the present case, Guiliano testified that: "The C I has been used for information seven to ten times that has proved to be positive information through other agencies." As clarification, he testified that the information that she had provided "[h]as been relayed to other agencies and they opened up cases that led to arrests." He also confirmed that all cases involved drugs. Neither Guiliano nor any other officer specified the nature of the information provided by the informant, the "agencies" to which it was transmitted, the names of the targets of their investigations (other than that they did not involve defendant), or whether any had been convicted of crimes following arrests resulting from those investigations. All police witnesses testified that their investigation on September 20, 2000 was Dunellen's first arising from this informant's tip. Jacques testified that he had "seen" the informant approximately seven times before September 20 and that he had arrested her on the *439 paraphernalia charges. However, he did not give any further details with respect to his knowledge of the informant.
The weight to be given similar information when judging the reliability of a tip under the totality of the circumstances was discussed by the Supreme Court in determining to suppress evidence as the result of the absence of probable cause in Smith, supra, and State v. Zutic, 155 N.J. 103, 111, 713 A.2d 1043 (1998). In Smith, evidence concerning the veracity of an informant consisted of a statement by the police that "[h]e did a job for me in the past" and that the information supplied resulted in an arrest and conviction. 155 N.J. at 88, 96, 713 A.2d 1033. The Supreme Court held that although this conclusory information "increases the likelihood that the informant was being truthful and possessed the necessary `veracity,' without more information relating to the informant's history or motives, the information does not firmly establish his truthfulness in this case." Id. at 97, 713 A.2d 1033. In Zutic, the Court held that a simple assertion by the police that an informant was "reliable," without more, was insufficient to permit the Court to make an independent evaluation of the informant's veracity. Consequently, the Court held, "[t]he officer's conclusory assertion that the informant was reliable was not sufficient to establish the informant's veracity." 155 N.J. at 111, 713 A.2d 1043.
In the present case, testifying officers attested to seven to ten instances of successful cooperation. However, none occurred in Dunellen, thereby permitting first-hand verification of the informant's prior veracity. Moreover, the information supplied by Dunellen's police with respect to the other tips, although containing greater detail than that provided in Zutic, remained insufficient to permit any independent evaluation by the court.
We also note that at the time that the tip was given, charges of possession of drug paraphernalia were pending against the informant. The police acknowledged that the information was provided in an effort to lessen or eliminate those disorderly persons charges. Moreover, the evidence suggests that the informant used cocaine, and it established her willingness to participate in drug-related criminal conduct.[3] These facts can be construed as undercutting the informant's veracity. State v. Kurland, 130 N.J.Super. 110, 114-15, 325 A.2d 714 (App.Div.1974).
As a general rule, it is assumed that a tip from a citizen informer is based on personal knowledge, whereas that of a police informant may be premised upon rumor and innuendo. See State v. Gagen, 162 N.J.Super. 105, 111-13, 392 A.2d 239 (App.Div.1978); State v. Williams, 251 N.J.Super. 617, 630-31, 598 A.2d 1258 (Law Div.1991). Thus, further verification of the credibility of a citizen giving a tip is not generally required whereas that verification is usually necessary when a police informant provides the tip. Davis, supra, 104 N.J. at 506, 517 A.2d 859. The fact that the police informant has, herself, engaged in criminal activity further undercuts her veracity. However, it can be argued that an informant's expectation of gain or concession cannot be viewed similarly, since gain seldom flows in this context from mistruth. See Adams v. Williams, 407 U.S. 143, 146-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612, 617 (1972).
The Supreme Court has held that the "basis of knowledge" underlying an informant's *440 tip can be established by direct evidence of the manner in which the informant learned of the criminal activity, by details that establish that the informant's knowledge has been derived from a trustworthy source, or by a prediction of hard-to-know future events. Smith, supra, 155 N.J. at 94-95, 713 A.2d 1033.
In the present case, the informant confirmed her personal knowledge of the illegal drug-related activities of a person named Andre when, in a call overheard by Jacques, he responded to a request for a person of that name, stated that he remembered the informant, and agreed to deliver the illegal drugs that she sought to purchase to the Dunellen train station. It was thus clearly established that the informant had set up a drug transaction with someone.
Our difficulty with this case lies in the fact that, at the time of the Terry stop, nothing had corroborated the fact that defendant was the "Andre" to whom the informant had spoken or that defendant intended to engage in criminal activity. The facts elicited at the suppression hearing establish that the police relied entirely upon the informant for an identification of "Andre." They had no description of "Andre." Further, they had no basis upon which to gauge the extent of the informant's knowledge of "Andre's" appearance and thus to measure the certainty or accuracy of the identification. They also relied solely upon the informant's prediction, without any evidence of confirming suspicious behavior, in determining that the person identified as "Andre" planned to engage in a drug sale. For all the police knew, the informant's identification of defendant could have been premised merely upon his sex and race and upon the fact that he entered the station parking lot shortly after the informant placed her drug order. The innocent explanation provided to the police by Goggins for his presence with defendant at the station that they sought but failed to pick up Goggins' girlfriendcould well have been true, particularly since, during the period after the arrival of the Mazda, both east-and west-bound trains stopped at the station.
We therefore must determine in light of the facts presented at the suppression hearing whether an investigatory stop can be constitutionally premised upon an on-site identification provided by a known police informant, when the identification has not been independently corroborated and no suspicious conduct by the identified individual is observed. In the somewhat unusual circumstances of this case, we find that it can.
Precedent establishes that "[b]ased on [the] whole picture, the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, supra, 449 U.S. at 417-18, 101 S.Ct. at 694-95, 66 L.Ed.2d at 629 (emphasis added). See also Davis, supra, 104 N.J. at 500-01, 517 A.2d 859. In this context, we recognize that the level of proof required to justify an investigative stop is less than that required to demonstrate probable cause. Zutic, supra, 155 N.J. at 113, 713 A.2d 1043. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." Adams, supra, 407 U.S. at 145, 92 S.Ct. at 1923, 32 L.Ed.2d at 616. Nonetheless, reasonable suspicion must be founded not only upon reliable information that illegal conduct is to occur but also upon reliable information as to the identity of the prospective perpetrator. Moreover, although the quantum of proof may be lower, evidence of its reliability *441 must remain. As the Supreme Court held in finding a violation of the defendant's fourth amendment rights in State v. Caldwell, 158 N.J. 452, 730 A.2d 352 (1999), even when strong evidence of an informant's veracity exists, consisting of a four and one-half-year history of reliable information, in order to stop a suspect engaged in innocent activity, "[t]he police must have a sufficiently detailed description of the person to be able to identify that person as the suspect named by the informant. Without such a requirement, police could theoretically conduct wide-ranging seizures on the basis of vague general descriptions." Id. at 460, 730 A.2d 352.
In Caldwell, the informant, who did not physically describe the suspect except by stating his race and specifying the location where he was standing, was not present at the time of the investigatory stop at issue. Cf. also State v. Richards, 351 N.J.Super. 289, 300-08, 798 A.2d 136 (App.Div.2002)(an anonymous tip that an undescribed black male in a public telephone booth near a tire store in the early hours of the morning was armed with a gun was insufficient to justify an investigatory stop, even when the suspect declined to respond to police questioning); State v. Goree, 327 N.J.Super. 227, 240, 742 A.2d 1039 (App.Div.2000)(an anonymous tip that an otherwise undescribed black man in a green and purple multipurpose vehicle parked at a particular location was carrying a handgun "did not provide the objectively reasonable suspicion required for an investigatory stop unless it was sufficiently corroborated by other evidence." When no suspicious conduct was observed prior to search, that search was illegal).
The presence of the informant at the time of the stop and the identification of defendant by that informant serves to distinguish the case before us from Caldwell, Richards and Goree. As we previously observed, because the proposed drug transaction between the informant and "Andre" was overheard by Jacques, the imminence of criminal conduct was not substantially in question. The only issue was the identity of "Andre." Insufficient descriptive information was provided by the informant to have permitted the police to stop anyone, had they been operating apart from the informant. However, the informant was present at the station in a police vehicle with Jacques. Her identification was first-hand. In these circumstances, the fact that the informant proffered information in order to reduce charges pending against her added to, rather than decreased her veracity, since it is inconceivable that she would have consciously misidentified "Andre" while seated in the back of a police car operated by the person who had effected her own arrest.
We find, therefore, that the State has met its burden of demonstrating the overall reasonableness of the search. Adams, supra, 407 U.S. at 147, 92 S.Ct. at 1923-24, 32 L.Ed.2d at 617. The trial judge did not err in failing to suppress the drugs and money found on defendant following his arrest.

II.
Defendant has additionally raised as error the trial court's determination not to order disclosure of the confidential informant's identity.
N.J.R.E. 516 permits the prosecution and others to refuse to disclose as privileged the identity of a confidential informant unless the identity of that person has already been otherwise disclosed or disclosure of the informant's identity is essential to assure a fair determination of the issues. See also, e.g., State v. Williams, 356 N.J.Super. 599, 603-06, 813 *442 A.2d 1215 (App.Div.2003). We stated in Williams:
Our Supreme Court has outlined instances in which the privilege is inapplicable: where the informant's identity is already known to those who might pose a risk of retaliation against the informant; where the identity of the informant is relevant and helpful to the defense or is essential to a fair determination of the case; where the informant is an essential witness to an issue that is basic to the case; where the informant actively participated in the crime for which defendant is charged; where entrapment is a plausible defense; and where disclosure is mandated by fundamental principles of fairness to the accused.
[Id. at 604, 813 A.2d 1215 (citing State v. Milligan, 71 N.J. 373, 383-84, 365 A.2d 914 (1976)).]
Whether disclosure of the identity of an informant will be required depends on a balancing of the public's interest in protecting the flow of information in aid of law enforcement with a defendant's right to effectively prepare his case. Milligan, supra, 71 N.J. at 384, 365 A.2d 914 (citing Roviaro v. United States 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 646 (1957)); Cashen v. Spann, 66 N.J. 541, 553, 334 A.2d 8, cert. denied, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975); State v. Oliver, 50 N.J. 39, 43-46, 231 A.2d 805 (1967).
At the outset, we find no waiver of the informant's privilege by the State through any prior disclosure of identity by it. However, we question the necessity of identification in this case, since Andre professed to know the informant when she placed her drug order. Perhaps his knowledge was inaccurate or incomplete; we do not know. We therefore continue our analysis, and in this context, find no evidence that disclosure of the identity of the informant was essential on any of the grounds set forth in Milligan. The "strong showing of need" that is a requisite to disclosure was not demonstrated in this case. State v. Florez, 134 N.J. 570, 578, 636 A.2d 1040 (1994).
Defendant argues on appeal that disclosure of the identity of the informant was necessary to place defendant's presence at the Dunellen train station in context. He argues further that the jury's question during deliberations as to why the police stopped defendant and his companion reinforces the need for the information. We disagree. All of the information supplied by the confidential informant was disclosed to defendant prior to the suppression hearing, as it should have been (see State v. Cooper, 301 N.J.Super. 298, 304-06, 693 A.2d 1267 (App.Div.1997)), and it was reiterated through police testimony at the hearing itself. Thus, defendant was there accorded any benefit that an airing of the information could convey. A recitation at trial of the events occurring prior to the Terry stop would only have served to strengthen the proofs on the State's charge that defendant intended to distribute the cocaine found on his person following his arresta charge on which he was acquitted by the jury. Disclosure to the jury of what occurred prior to the stop therefore could not rationally be found helpful to the defense. Nor was it essential to the jury's determination of the matter, since its absence did not in any respect strengthen the proofs offered on the charges against defendant.
Defendant argues additionally that the identity of the informant was relevant to a determination of her veracity in the context of the suppression hearing. If this case indeed turned upon such matters as the reliability of prior tips provided by the informant, on the nature of charges pending against her or on her record, defendant's argument would have some weight. *443 Here, however, that weight is lacking. This is so because we found the informant's on-site identification to have been decisive in finding reliable her identification of defendant as the person with whom she set up a drug deal. Knowing who the informant was adds no relevant information in this context.
We note further that the informant was not a witness at trial, nor was her testimony essential to a basic issue in the case. Because the drug deal was never consummated, she was not a participant in the crime for which defendant was charged or in the discovery of contraband secreted in defendant's clothing. Compare Roviaro, supra, 353 U.S. at 63-65, 77 S.Ct. at 630, 1 L.Ed.2d at 647 (disclosure was required of identity of informant who set up a drug deal, drove with the defendant to the stash, and was the sole participant, other than the accused, in the transaction charged). There is a distinction between an informant who "participa[tes] in a crime and [one] who is merely present as an observer at the scene." State v. Salley, 264 N.J.Super. 91, 98, 624 A.2d 42 (App. Div.1993). Entrapment was not raised as a defense in the matter. And defendant has offered nothing to suggest that disclosure was mandated by principles of fundamental fairness. See Oliver, supra, 50 N.J. at 46-48, 231 A.2d 805 (discussing the inability of defendant to articulate how an informant's testimony would serve the defense).
Under these circumstances, we find no principled basis for disclosure of the informant's identity, and no abuse of discretion on the part of the trial judge in denying defendant's motion seeking such disclosure. Milligan, supra, 71 N.J. at 384, 365 A.2d 914 (standard of review). Such disclosure would expose the informant to a risk of retaliation (Salley, supra, 264 N.J.Super. at 97, 624 A.2d 42 (citing Oliver, supra, 50 N.J. at 42, 231 A.2d 805 and Milligan, supra, 71 N.J. at 382 n. 4, 365 A.2d 914)) without concomitant benefit to the truth-finding process.

III.
Defendant's remaining arguments, as set forth in the argument headings previously enumerated have been addressed herein or are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
[2] 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
[3] There is no evidence in this case that the informant was offered monetary compensation for her information.