**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1602-18T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANTONIO WINTERS, a/k/a
TONY WINTERS,

    Defendant-Appellant.

_____

Submitted January 28, 2020 – Decided March 13, 2020

Before Judges Yannotti and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 17-08-1700.

Joseph E. Krakora, Public Defender, attorney for appellant (Elizabeth Cheryl Jarit, Deputy Public Defender II, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Catlin A. Davis, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

After the trial court denied his motion to suppress, defendant pled guilty to second-degree certain persons not to possess weapons, N.J.S.A. 2C:35-7(n), as charged in Atlantic County Indictment No. 17-08-1700. The trial court thereafter sentenced defendant to a ten-year prison term, with five years of parole ineligibility. Defendant appeals from the judgment of conviction (JOC) dated November 2, 2018. We affirm.

I.

We briefly summarize the testimony presented at the suppression hearing. On May 16, 2017, a confidential informant (CI) told Detective Brian Hambrecht, of the Atlantic City Police Department (ACPD), that a man named Winters "had possession of a gun" at a specific location on North New York Avenue and was wearing "a red hat, black jeans[,] and red and black sneakers." The CI's tip did not describe the gun or its location.

The detective did not have independent sources to corroborate the CI's tip. However, Detective Hambrecht stated that the ACPD had previously used this CI on two separate occasions, which resulted in a number of arrests. On May 16, 2017, at approximately 3:00 p.m., detectives from the ACPD set up surveillance at the location provided by the CI. After about twenty to twenty-five minutes, Detective Hambrecht observed a man, who was later identified as

A-1602-18T3

defendant, matching the suspect's description exit the building. Defendant walked north on North New York Avenue and made a right-hand turn on Adriatic Avenue. At some point, Detective Hambrecht lost visual contact with defendant.

Sergeant Andrew Leonard arrived at the scene to assist Detective Hambrecht and other officers in conducting surveillance on "a potentially armed suspect." Sergeant Leonard also observed defendant leave the building. He was in an unmarked, black Dodge Durango. He was wearing plain clothes with a police badge hanging from his neck. He approached defendant while in his vehicle.

Sergeant Leonard testified that defendant was surprised, recognized the vehicle as a police vehicle, and moved his hands "towards the area of his waistband . . . ." Sergeant Leonard "immediately exited [the] vehicle, drew [his] firearm and ordered [defendant] to put his hands in the air." Defendant initially walked towards the vehicle but after the officer repeated his order, he raised his hands.

Defendant informed Sergeant Leonard that he "just found" a firearm and he was holding it in his waistband. The officer secured defendant's hands behind his back. He "reached into [defendant's] waistband and removed the firearm."

3

At that point, Detective Hambrecht arrived. Sergeant Leonard handed him the firearm he had recovered from defendant.

Sergeant Leonard and another officer handcuffed defendant and took him into custody. Defendant did not have a permit or other lawful authority, which allowed him to possess the firearm. Defendant also knew he had certain prior convictions, including a robbery conviction, which precluded him from possessing a firearm lawfully.

Sergeant Leonard testified that he was "concerned" when defendant reached towards his waistband, after defendant saw his vehicle. He said that, based upon his "training and experience[,]" the waistband is an area where individuals commonly carry firearms.

Detective Hambrecht testified that he commenced surveillance of defendant based on the CI's tip that defendant "had possession of a gun" and the information the CI provided regarding defendant's clothing and location. Detective Hambrecht acknowledged that individuals commonly reach into their waistband for reasons unrelated to possession of a firearm.

The motion judge placed his decision on the record. The judge stated that the investigation at issue began when the ACPD received a call from a CI, who said that a person named Winters was in a building at a particular location and

had a gun. The police commenced surveillance at that location and defendant was seen leaving the building. Defendant walked a short distance and, when Sergeant Leonard approached, he saw defendant make a gesture with his hand toward his waistband.

The judge found that, at that point, Sergeant Leonard had reasonable articulable suspicion to stop defendant for investigation. The judge noted that the officers had acted on the basis of a tip from a CI, who previously provided information to the ACPD that led to a number of arrests and was considered reliable. Moreover, the officers corroborated the CI's tip with their surveillance and observations.

The judge noted that the officers observed defendant at the location the CI had described, and Sergeant Leonard saw defendant make a gesture toward his waistband. The judge found that the gesture was significant because the CI reported that defendant had a gun. The judge entered an order denying the motion to suppress.

On July 12, 2018, defendant pled guilty to count three of the indictment, in which he was charged with second-degree certain persons not to possess weapons. The State agreed to recommend that the judge sentence defendant to a ten-year term of incarceration, with five years of parole ineligibility. The State

also agreed to dismiss the remaining counts of the indictment and other charges filed in a separate complaint.

On October 26, 2018, the judge sentenced defendant in accordance with the plea and thereafter filed a JOC. This appeal followed. On appeal, defendant argues:

> POINT I
> THE INSUFFICIENT INFORMATION PROVIDED ABOUT THE RELIABILITY AND BASIS OF KNOWLEDGE FOR THE CI'S TIP FAILED TO ESTABLISH THAT THE OFFICER HAD REASONABLE SUSPICION TO STOP DEFENDANT.
>
> POINT II
> DEFENDANT WAS DENIED DUE PROCESS WHEN HE WAS PREVENTED FROM CROSS-EXAMIINIG THE OFFICER ABOUT WHETHER THE CI HAD ANY PENDING CHARGES.
>
> POINT III
> RESENTENCING IS REQUIRED BECAUSE THE COURT MERELY RECITED THE DEFENDANT'S CRIMINAL HISTORY AS ITS STATEMENT OF REASONS IN FINDING AGGRAVATING FACTORS THREE, SIX, AND NINE.

II.

As noted, defendant argues that the judge erred by denying his motion to suppress. He contends the officer did not have reasonable suspicion to make the

6

investigatory stop. He argues the State failed to establish the veracity and reliability of the CI.

When considering the trial court's decision on a motion to suppress, our "scope of review is limited." State v. Robinson, 200 N.J. 1, 15 (2009). We "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." Ibid. (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Furthermore, we give deference to the trial judge's findings because those findings are "substantially influenced" by the judge's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

We may not disturb the trial court's findings merely because we "'might have reached a different conclusion were it the trial tribunal' or because 'the trial court decided all evidence or inference conflicts in favor of on side' in a close side." Ibid. (quoting Johnson, 42 N.J. at 162). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" Robinson, 200 N.J. at 15 (quoting Elders, 192 N.J. at 244).

"[U]nder both the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of [the New Jersey] Constitution, searches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid."  Elders, 192 N.J. at 246 (citing State v. Pineiro, 181 N.J. 13, 19 (2004)).  However, "[n]ot all interactions between law enforcement and citizens constitute seizures, and not all seizures are unconstitutional."  Ibid. (citing State v. Maryland, 167 N.J. 471, 486-87 (2001)).

An "investigatory stop" or "detention" is constitutional "if it is based on 'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity."  State v. Rodriguez, 172 N.J. 117, 126 (2002) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).  Reasonable suspicion is "judged objectively: 'would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?'"  State v. Arthur, 149 N.J. 1, 7-8 (1997) (quoting Terry, 392 U.S. at 21-22).

The officer's conduct can be considered "in light of his experience[,]" but "[n]either 'inarticulate hunches' nor an arresting officer's subjective good faith can justify an infringement of a citizen's constitutionally guaranteed rights."  Id.

at 8 (citing Terry, 392 U.S. at 21, 27). Ultimately, reasonable suspicion is "something less than the probable cause standard needed to support an arrest." State v. Thomas, 110 N.J. 673, 678 (1988).

"[A] descriptive tip by an informant may contribute to a reasonable objective and particularized suspicion to serve as the basis for an investigatory stop." State v. Richards, 351 N.J. Super. 289, 300 (App. Div. 2002) (quoting State v. Caldwell, 158 N.J. 452, 467 (1999)). The reliability of an informant's tip must be determined based on the totality of the circumstances. State v. Novembrino, 105 N.J. 95, 122 (1987).

"An informant's 'veracity' and 'basis of knowledge' are two highly relevant factors under the totality of the circumstances." State v. Zutic, 155 N.J. 103, 110 (1998) (citing State v. Smith, 155 N.J. 83, 93 (1998)). However, "[a] deficiency in one of those factors 'may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" Id. at 110-11 (quoting Illinois v. Gates, 462 U.S. 213, 233 (1983)).

An informant's veracity may be established in several ways, including "by demonstrating that the informant proved to be reliable in previous police investigations." State v. Sullivan, 169 N.J. 204, 213 (2001); see also Zutic, 155

N.J. at 111. However, the proper weight afforded to an informant's past reliability "may vary with the circumstances of each case" and past reliability is not conclusive under the totality of the circumstances. Sullivan, 169 N.J. at 213 (citing Smith, 155 N.J. at 94).

"An informant's basis of knowledge is sufficient 'if the tip itself relates expressly or clearly how the informant knows of the criminal activity.'" State v. Jones, 179 N.J. 377, 389 (2004) (quoting Sullivan, 169 N.J. at 213). If the informant does not identify his/her basis of knowledge, "a reliable basis of knowledge may nonetheless be inferred from the level of detail and amount of hard-to-know information disclosed in the tip." Zutic, 155 N.J. at 111. "Independent corroboration" of those details may also "bolster the tip's reliability." Ibid.

Here, the judge found that Sergeant Leonard had reasonable articulable suspicion to stop defendant based on the CI's tip; the surveillance of defendant, which corroborated the tip; and defendant's gesture towards his waistband, which indicated he may be in possession of a weapon. The judge noted that the CI's veracity was shown by the CI's prior cooperation with the ACPD, which led to a number of arrests.

A-1602-18T3

Moreover, although the CI did not identify his or her basis of knowledge, the informant provided details from which such knowledge could be inferred. The CI identified defendant by name, described his clothes, stated the location where he could be found, and indicated that defendant had a gun.

Furthermore, the CI's tip was corroborated by the officers' surveillance. They observed defendant exiting the building the CI had identified. He also was wearing the clothes the CI had identified. When Sergeant Leonard approached defendant in his vehicle, defendant gestured toward his waistband.

The sergeant testified, based on his experience as a police officer, that the waistband is "a[n] area where individuals commonly will illegally carry firearms." The gesture corroborated the CI's statement that defendant was in possession of a gun.

We are therefore convinced that there is sufficient credible evidence in the record to support the trial court's findings of fact. The court correctly determined that Sergeant Leonard had reasonable articulable suspicion to suspect defendant committed, or was about to commit, an offense. Therefore, the investigatory stop was lawful. Accordingly, the court did not err by denying defendant's motion to suppress the evidence obtained during the investigatory stop.

11

Next, defendant argues he was deprived of his right to due process because at the suppression hearing the judge limited his cross-examination of Detective Hambrecht. Defendant asserts he is entitled to a new suppression hearing.

"In reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion." Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008) (citing Brenman v. Demello, 191 N.J. 18, 31 (2007)). We will uphold a trial court's evidentiary determination unless its "finding was so wide of the mark that a manifest denial of justice resulted." State v. Carter, 91 N.J. 86, 106 (1982).

Here, defendant's attorney asked Detective Hambrecht whether the CI was under any indictment or charges at the time he provided the tip. The assistant prosecutor objected to the question, and the judge sustained the objection.

Defendant argues that the judge erred by precluding him from eliciting information that allegedly "went to the heart of the veracity" of the CI. We disagree. As we stated previously, because the officers relied upon the CI's tip as a basis for the investigatory stop, the State had to establish the veracity of the informant. Whether or not the CI had pending charges at the time the CI provided the tip was not relevant to the CI's veracity.

Detective Hambrecht testified that he viewed the CI as reliable because the CI had previously provided information, which led to a number of arrests. Moreover, the officers corroborated the CI's tip with their surveillance and observations. The fact that the CI may have had pending charges when the CI provided the tip would not necessarily render the CI unreliable or negate the veracity of the information provided.

Indeed, vital information about possible criminal activity does not always come "from people of high motivation." State v. Oliver, 50 N.J. 39, 42 (1967). "The police must have the aid of [persons] of lesser quality . . . [who] are needed for what they know . . . [and] for what they can learn because of their associations." Ibid.

In support of his argument, defendant relies upon State v. Williams, 364 N.J. Super. 23 (App. Div. 2003). In that case, a CI informed the police that she could arrange a drug transaction with a person named "Andre." Id. at 27. The CI had previously given the police unspecified information that led to investigations and drug-related arrests of other persons. Id. at 27-28. An officer was assigned to investigate the matter. Id. at 28.

The officer went with the CI to a train station, where the CI used a public phone to call "Andre" and place an order for drugs. Ibid. The officer overheard

the conversation.  Ibid.  Shortly thereafter, an automobile arrived at the train station and the CI identified the passenger in the car as "Andre."  Ibid.  The defendant exited the car and stood on the platform, but he did not engage in any conduct of a suspicious nature.  Ibid.  The defendant later returned to the car and sat in the passenger seat.  Ibid.

The driver of the car attempted to leave the area, but the police prevented him from doing so.  Id. at 28-29.  The officers then questioned the defendant and the driver, and the defendant said his first name was "Andre."  Id. at 29.  The police found suspected cocaine in the car and arrested the defendant and the driver.  Ibid.  At police headquarters, the officers searched the defendant and found crack cocaine and currency in various denominations.  Ibid.

The defendant filed a motion to suppress and argued that the investigatory stop was unlawful.  Id. at 30.  The defendant asserted that the CI's tip was unreliable.  Id. at 30-31.  We held that the CI's on-site identification of the defendant as the person with whom she arranged the drug transaction provided a sufficient basis for the investigatory stop, even though the CI had not provided any descriptive information and the police did not see the defendant engage in any suspicious conduct.  Id. at 35-37.

We observed that the police had conceded the CI provided the tip in an effort to obtain favorable disposition of a pending municipal charge of possession of drug paraphernalia. Id. at 27. We stated that the fact that a police informant has engaged in criminal activity may undercut the informant's veracity. Id. at 34 (citing State v. Davis, 104 N.J. 490, 506 (1986)). We also stated that it could "be argued that an informant's expectation of gain or concession cannot be viewed similarly, since gain seldom flows in this context from mistruth." Ibid. (citing Adams v. Williams, 407 U.S. 143, 146-47 (1972)).

We added that the fact that the CI had provided the police with the tip "in order to reduce charges pending against her added to, rather than decreased her veracity . . . ." Id. at 37. We commented that it was "inconceivable that [the CI] would have consciously misidentified 'Andre' while seated in the back of the police car operated by the person who had effected [the CI's] own arrest." Ibid.

We are convinced defendant's reliance upon Williams is misplaced. That case does not support defendant's contention that the judge erred by precluding him from eliciting testimony as to whether the CI had pending charges. Defendant asserts that this information was essential in determining the CI's veracity. Williams indicates, however, that pending charges would add to,

rather than detract from, a CI's veracity because a CI will not gain from providing false information to law enforcement.  See ibid.

Moreover, Williams supports the conclusion that information as to whether a CI has pending charges will not be relevant where, as in this case, there is other evidence that establishes the reliability and veracity of the CI.  See id. at 35-37.  We therefore reject defendant's contention that the motion judge mistakenly exercised his discretion by limiting the cross-examination of Detective Hambrecht.  The judge's evidentiary ruling did not deprive defendant of his right to due process.

IV.

Defendant also argues that his sentence is excessive.  He contends the judge failed to provide specific findings with regard to the aggravating factors.

When reviewing a trial court's sentencing determination, we apply a "deferential" standard of review.  State v. Fuentes, 217 N.J. 57, 70 (2014).  "The reviewing court must not substitute its judgment for that of the sentencing court."  Ibid.  Rather, "[t]he appellate court must affirm the sentencing unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the

facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

"To facilitate meaningful appellate review, trial judges must explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 65 (2014). "A clear explanation 'of the balancing of aggravating and mitigating factors with regard to imposition of sentences and periods of parole ineligibility is particularly important.'" Fuentes, 217 N.J. at 73 (quoting State v. Pillot, 115 N.J. 558, 565-66 (1989)).

Here, the judge found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The judge found no mitigating factors. The judge sentenced defendant to a ten-year term of incarceration, with a five-year period of parole ineligibility.

In sentencing defendant, the judge stated that defendant was fifty years old and employed. The judge noted that defendant had thirty-one arrests in New Jersey and New York, and had been convicted in New Jersey of various indictable offenses, which include robbery, theft, unlawful possession of a

weapon, and other drug offenses. He also has five misdemeanor convictions in New Jersey, but no history of domestic violence. This was defendant's eleventh conviction of an indictable offense. He also had four disorderly persons offenses in New York, and a felony conviction in that state for possession of a controlled dangerous substance.

In addition, the judge observed that defendant had been afforded probationary treatment, along with inpatient and outpatient substance abuse treatment. The judge noted that defendant had been sentenced to five years' probation, but he was incarcerated after violating the conditions of probation. In addition, defendant had been paroled, but he violated the conditions of parole and had been returned to prison.

On appeal, defendant argues that the judge failed to provide a statement of reasons for his findings of aggravating factors three, six, and nine. He contends these findings cannot be based solely upon his criminal history. Defendant notes that at sentencing, his cousin and sister explained that he has been addicted to drugs since he was seventeen years old and was never afforded treatment for that addiction. He asserts that after his parents died, there was a "spiral of events" that led to this conviction.

A-1602-18T3

We conclude, however, that there is sufficient credible evidence in the record to support the judge's findings of aggravating factors three, six, and nine, and the judge's determination that no mitigating factors apply. The judge provided a sufficient explanation for his findings. Moreover, defendant was sentenced in accordance with his negotiated plea. As the State points out, the sentence was a substantial reduction of defendant's exposure under the indictment, which included a first-degree weapons charge. We are convinced the sentence is a reasonable exercise of the trial court's sentencing discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1602-18T3