126 N.J. Super. 430 (1974)
315 A.2d 46
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JUAN LAKOMY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 9, 1973.
Decided February 1, 1974.
*431 Before Judges HANDLER, MEANOR and KOLE.
*432 Mr. Joseph D.J. Gourley, Pasasic County Prosecutor, attorney for appellant (Mr. Dante P. Mongiardo, Assistant Prosecutor of counsel and on the brief).
Mr. Dominic Cavaliere attorney for respondent.
The opinion of the court was delivered by HANDLER, J.A.D.
Defendant was charged with possession of an automatic revolver without first having obtained a permit, contrary to N.J.S.A. 2A:151-41(a). On motion the evidence was suppressed, and the State was granted leave to appeal that interlocutory order.
The only testimony at the hearing on the motion to suppress was that of the arresting police officer. He stated that on October 20, 1972 he was alone on patrol duty when he received a radio call from his dispatcher stating that there was a report of a man with a gun at the Alfred Heller Heat Treating Company. He arrived simultaneously with another police officer who had also been dispatched to the scene. At the factory the policemen were met by an officer of the company. This individual related that an employee had told him that Juan Lakomy, the defendant, had a gun. The officers were led to the washroom and defendant was specifically pointed out to them.
Defendant, with his back to the officers, was washing his hands. Both officers approached from the rear. Each officer grabbed one of defendant's arms, stated that they were police officers, and gave defendant a pat-down search and found a pistol tucked under defendant's shirt. The officers had not seen the gun before defendant was searched. Defendant was arrested after the gun was found.
What occurred here was a "stop and frisk." The inquiry in this context is whether "the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate." Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, *433 1880, 20 L.Ed.2d 889 (1968). As stated in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972):
In Terry this Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d at 906." The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. [At 145, 92 S.Ct. at 1923]
In a variant situation in State v. Dilley, 49 N.J. 460, 468 (1967), an experienced police officer in a high crime area came upon two strangers who were lingering in a parking lot at 3 A.M. and who attempted to leave when the officer arrived. It was held that the officer had a right to stop and to frisk the men for his own protection. The court noted (at 467) that such a stop and frisk "is not to be viewed as a formal arrest requiring probable cause." It went on to state:
The fourth amendment does not speak in absolute terms but strikes a balance between the interests of the individual in being free from police interference and the interests of society in effective law enforcement. Thus in terms it protects the people's right to security against "unreasonable" searches and seizures. In determining reasonableness, weight must of course be given to all of the pertinent factors including the basis of the suspicion on the part of the police and the nature and extent of the restraint on the individual. [At 468]
Under this standard it has been recognized that, in situations involving aggravated circumstances presenting the strong possibility of some physical danger, a police officer may promptly seek and seize a weapon believed to be in a person's possession. United States v. Pleasant, 469 F.2d 1121 (8 Cir.1972); State v. Dennis, 113 N.J. Super. 292 (App. Div.), certif. den. 58 N.J. 337 (1971); State v. D'Orsi, 113 N.J. Super. 527 (App. Div.), certif. den. 58 N.J. 335 (1971); People v. Taggart, 20 N.Y.2d 335, 283 N.Y.S.2d 1, 229 *434 N.E.2d 581 (Ct. App. 1967), app. dism. 392 U.S. 667, 88 S.Ct. 2317, 20 L.Ed.2d 1360 (1968) This type of situation may be compared instructively with that which involves suspicious conduct but does not project a threat of physical danger which may require self-protection, as in In re State in the Interest of D.S., 63 N.J. 541, reversing on dissenting opinion below 125 N.J. Super. 278 (App. Div. 1973). It may be further contrasted with full searches which are incidental to an actual arrest for relatively minor offenses. E.g. United States v. Robinson, ___ U.S. ___, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Gustafson v. Florida, ___ U.S. ___, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).
The court recognized in Terry that an officer may conduct a limited protective search, not to discover evidence but to allow him to pursue his investigation without fear of violence when he believes that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others * * *." 392 U.S. at 24, 88 S.Ct. at 1881. See also Adams v. Williams, supra, 407 U.S. at 146, 92 S.Ct. 1921. Here the information supplied was that defendant was armed with a gun. If such information were acceptable, it would justify a reasonable belief that defendant might be dangerous and that prompt protective measures, such as a frisk or a pat-down search, were dictated in order to complete an investigation of the complaint without creating a serious risk of physical injury.
Defendant's more pointed argument suggests that the information was not acceptable as a basis for the police action taken. He argues, in effect, that there could be no basis for the measures undertaken generated from the bare statement of the company executive, not otherwise corroborated. Consequently, he urges that the seizure of the weapon constituted an unconstitutional invasion of privacy.
Generally, some verification of an informant's disclosures of criminal activity, as well as a demonstration of his trustworthiness, is necessary in order to establish his credibility, so that such information may fairly and reasonably *435 be assimilated as a proper basis for appropriate police action. Adams v. Williams, supra; cf. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Different considerations obtain, however, when the informer is an ordinary citizen. There is an assumption grounded in common experience that such a person, regarded as a cooperative member of the general public, would in the ordinary course of events have no ties or connections with the underworld or the criminal element. He would be expected to be motivated by factors which are consistent with law enforcement goals. Consequently, an individual of this kind may be regarded as trustworthy and information imparted by him to a policeman concerning a criminal event would not especially entail further exploration or verification of his personal credibility or reliability before appropriate police action is undertaken. Erickson v. State, 507 P.2d 508 (Alaska Sup. Ct. 1973); People v. Zimnicki, 29 Cal. App.3d 577, 105 Cal. Rptr. 614 (D. Ct. App. 1972); Gaskins v. United States, 262 A.2d 810 (D.C. Ct. App. 1970); People v. Davis, 10 Ill. App.3d 611, 295 N.E.2d 108 (App. Ct. 1973); People v. Wayne, 9 Ill. App.3d 344, 292 N.E.2d 186 (App. Ct. 1972); People v. Arthurs, 24 N.Y.2d 688, 301 N.Y.S.2d 614, 249 N.E.2d 462 (Ct. App. 1969).
The Wisconsin Supreme Court in State v. Paszek, 50 Wis.2d 619, 184 N.W.2d 836, 842 (1971), explained the rationale behind this distinction:
A different rationale exists for establishing the reliability of named "citizen-informers" as opposed to the traditional idea of unnamed police contacts or informers who usually themselves are criminals. Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out of revenge against the subject. The nature of these persons and the information which they supply convey a certain impression of unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown. One practical way of making such a showing is to point to accurate information which they have supplied in the past.
*436 However, an ordinary citizen who reports a crime which has been committed in his presence, or that a crime is being or will be committed, stands on much different ground than a police informer. He is a witness to criminal activity who acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety. He does not expect any gain or concession in exchange for his information. An informer of this type usually would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he has supplied.
The imputation of reliability with respect to information given by an ordinary citizen and the founding of probable cause for effective police action based on such co-operation and concern are particularly appropriate in a context where the reactive measures taken are for the limited purpose of neutralizing a dangerous situation. In the present case the informer held a responsible position. He was an officer of the company with no apparent motive to fabricate or to rely heedlessly on baseless reports or rumor. If the information that there was an armed employee in the factory were true, it imported a risk of harm to persons on the premises or elsewhere. In this context, the citizen-informer was himself "in the nature of a victim or complainant, whose information could be taken at face value irrespective of other evidence concerning his reliability." People v. Baker, 12 Cal. App.3d 826, 841, 96 Cal. Rptr. 760, 770 (D. Ct. App. 1970); Leonard v. State, 506 P.2d 596 (Okla. Cr. 1973); People v. Ramos, 17 Mich. App. 515, 170 N.W.2d 189 (App. Ct. 1969).
Moreover, the complainant waited for the police to arrive and he himself informed the police of defendant's whereabouts and pointed out defendant, so there was no risk of misidentification. By such personal involvement the informant exposed himself to reprimand or personal accountability. These were important considerations in the evaluation of his credibility and the reliability of the information he imparted. Adams v. Williams, supra, 407 U.S. at 147, 92 S.Ct. 1921; United States v. Pearce, 356 F. Supp. 756, *437 759-760 (E.D. Pa. 1973). The fact that the information included hearsay on the informant's part is a factor to be considered. It is by no means fatal, however, to the assessment of the credibility or the plausibility of the basic information related by the informant and the determination that probable cause existed under the circumstances for the police action which was undertaken. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).
We note the additional argument on this appeal that defendant, under the circumstances narrated herein, was not in violation of N.J.S.A. 2A:151-41(a) because his possession of the gun was not in a public place. Further, we are aware of State v. Johnson, 125 N.J. Super. 344 (App. Div. 1973). This contention, however, was not a basis for defendant's motion to suppress, nor was it ruled upon by the court below (although such contentions were advanced at the oral argument on the motion). While it is stated that reference was made to this argument on the motion for leave to appeal, we do not conceive that this issue is properly before the court for disposition on this appeal.
For the reasons stated, the order granting the motion to suppress evidence is reversed.