162 N.J. Super. 105 (1978)
392 A.2d 239
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES F. GAGEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted August 28, 1978.
Decided September 19, 1978.
*107 Before Judges BISCHOFF, MORGAN and HORN.
Messrs. Abrams & Wofsy, attorneys for appellant (Mr. Peter S. Valentine on the brief).
Mr. John J. Degnan, Attorney General, attorney for respondent (Mr. William F. Hyland, Former Attorney General; Ms. Katherine F. Graham, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant entered a negotiated plea of guilty to unlawful possession of lottery slips, in violation of N.J.S.A. 2A:121-3(b). He appeals from said conviction on the sole ground that the judge erred in denying his motion to suppress evidence consisting of said lottery slips obtained as a result of a warrantless search. R. 3:5-7(d). We agree with defendant's contention that the seizure of lottery slips from his person was unlawful and consequently reverse the order denying the suppression of the evidence.
The material facts developed at the evidential hearing through a single witness, the arresting officer, are not in dispute. Jersey City detectives were investigating wholesale pilferage of the Hudson Refrigeration Company (Hudson), allegedly by some of its employees. In the course of the investigation, about a week before July 16, 1974, a member of *108 a private investigation agency employed by Hudson informed the witness that an employee of Hudson bearing defendant's name was taking "numbers actions" from the other employees.
On July 16, 1974, while about five feet outside the employees' entrance to Hudson's building in a routine check of exiting employees, the witness stopped defendant, informed him that he was from the police, exhibited his badge to him and asked defendant his name. Upon hearing defendant's name, "* * * at that point something clicked, so far as him being the man who was doing the numbers action, and there was a piece of paper in his pocket and I asked him to give it to me, which he did." The witness added that when defendant was coming out he had observed him "put something in his pocket, which I believe was that paper." The paper which defendant surrendered to the detective constituted the foundation for the charge to which defendant pled guilty and which was the subject of the suppression motion.
It is to be observed that except for learning defendant's name, as supplied by the private investigator, defendant's behavior did not in anywise indicate criminal activity. It clearly appears that seeing defendant openly place a piece of paper in his pocket made no impression upon the detective until the latter learned defendant's identity.
The judge ruled that the search was valid "only because there was a voluntary consent given." The State correctly concedes that this ruling was erroneous.[1] Notwithstanding that the judge expressed some doubt as to the validity of the search[2] and failed to make any findings of *109 fact (R. 1:7-4; Hallberg v. Hallberg, 113 N.J. Super. 205 [App. Div. 1971]) as to probable cause, the State would have us sustain the judge's ruling on its argument that there was in fact probable cause and that the exigencies of the case warranted the detective's demand or a search  in effect, that in the exercise of our original jurisdiction (R. 2:10-5; Farmingdale Realty Co. v. Farmingdale, 55 N.J. 103, 106 (1969)) we should make findings consistent with that view. Since such findings would of necessity have to encompass a determination of the credibility of the testifying officer we would ordinarily decline to do so and would remand so that the trial judge could make appropriate findings (State v. Hodgson, 44 N.J. 151, 159-160 (1965), cert. den. 384 U.S. 1021, 86 S.Ct. 1929, 16 L.Ed.2d 1022 (1966); State v. Smith, 32 N.J. 501, 549 (1960), cert. den. 364 U.S. 936, 81 S.Ct. 382, 5 L.Ed.2d 367 (1961)). See also, State v. Smith, 113 N.J. Super. 120 (App. Div. 1971), certif. den. 59 N.J. 293 (1971). Because, however, we are of the belief that even imparting complete credibility to the testimony of the testifying officer there was a lack of probable cause, we need not remand; instead, we so hold and reverse.
The so-called "short-hand" test of whether there is probable cause to make a warrantless arrest is whether "under the circumstances a prudent man would be warranted in the belief that a crime probably is being committed." State v. Sims, 75 N.J. 337, 355 (1978). In the case at bar all that was before the court was the information supplied by the private investigator[3] that defendant was suspected of engaging in illegal lottery activity. The police did nothing during the week which followed the receipt of this information to verify it. In fact, the police did not know whether *110 the informer's information was based on personal knowledge or hearsay. In the face of defendant's challenge of this testimony as hearsay, although the prosecutor had the opportunity to establish that it was based on personal observation, he chose to rest without meeting that challenge.
The State contends that information supplied by a citizen-informer is inherently trustworthy, so that it is unnecessary to "further explor[e] or [verify] * * * his personal credibility before appropriate police action is undertaken." State v. Lakomy, 126 N.J. Super. 430, 435 (App. Div. 1974). But Lakomy, on which the State heavily relies, is distinguishable. The "police action" undertaken in that case was a "pat-down," or frisk of an individual reported by a citizen to be in possession of a weapon. In such cases, the police action is not a search for the purpose of detecting evidence of criminal activity; instead, it is a method of protecting the investigating officer and others from the danger of dealing with one suspected of being armed. Lakomy, supra at 433. See also, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Dilley, 49 N.J. 460 (1967). In this latter case, as stated in Lakomy, 126 N.J. Super. at 433, "[t]he court noted (at 467) that such a stop and frisk `is not to be viewed as a formal arrest requiring probable cause.'"
More recently, in State in Interest of H.B., 75 N.J. 243 (1977), our Supreme Court delineated the differences between the concept of a "frisk" for dangerous weapons as a protective measure for the police or others and the ordinary warrantless search for contraband, and clearly restricted the basis for the former. Thus it said:
* * * [W]e intend our decision here, justifying a protective frisk, to be narrow enough to be understood as comprehending only such lethal material, vis-a-vis gambling paraphernalia or narcotic contraband, for instance, although they too would evidence criminal activity. [at 251]
A review of H.B. makes it eminently clear that what is reasonable for the purpose of personal protection for police *111 or others may not constitute probable cause for executing a warrantless search.
The State also refers to State v. Canola, 135 N.J. Super. 224 (App. Div. 1975), mod. on other grds. 73 N.J. 206 (1977), and State v. Kurland, 130 N.J. Super. 110 (App. Div. 1974), in support of its contention that a citizen-informer's information is regarded as so inherently trustworthy as to obviate the necessity to verify his credibility. These cases do recognize the superior quality of information from such sources. But they do not go as far as the State urges. In Canola, for example, although the court stated (at 230) that a citizen-informer occupies "a different status," it did not decide that that status alone was sufficient. It relied in upholding the search of an apartment on not only the information supplied to the police by the citizen-informer but also on "the independent knowledge of the police concerning the details of the crime [robbery and murder]," Id., at 230, and the exigencies of the situation, which made the warrantless entry into the defendant's apartment imperative.
In Kurland the court said:
* * * When information is provided by a cooperative citizen, or an informant not from the criminal milieu, there is less need for establishing credibility of the informant. An ordinary citizen who reports a crime has been committed in his presence stands on a much different ground than a police informer. He is a witness to a crime who acts with an intent to aid the police in law enforcement because of his concern for society. He does not expect any gain or concession in exchange for his information. A citizen-informer of this type usually would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he had supplied. [at 114-115]
It will be noted that the tenor of this quotation indicates that it is assumed that the citizen-informer (at least in nonfrisk cases) had personal knowledge as distinguished from rumor or hearsay as to the information supplied to the police. Hence, in Kurland the police were held to have *112 justifiably acted on a warrant procured through information supplied by a citizen-informer who was an "eye-witness to the robbery." Id. at 114.
Erickson v. State, 507 P.2d 508 (Alaska Sup. Ct. 1973), cited in Lakomy, supra, 126 N.J. Super. at 435, put it this way:
We hold that a valid arrest may be made on information provided by a "citizen informer" and that the informer's prior reliability need not be established before the arrest. The only caveat placed on such a rule is that some of the details of the information must be verified before the arrest occurs. [at 518]
Lakomy, supra at 436, also quoted from State v. Paszek, 50 Wis.2d 619, 184 N.W.2d 836, 842 (Sup. Ct. 1971), which held that "an ordinary citizen who reports a crime which has been committed in his presence * * * stands on much different ground than a police informer."
In all the cases cited by Lakomy (at 435) from outside this jurisdiction for the holding that information supplied by citizen-informers is inherently reliable it was noted that, as in Lakomy itself, either the informers were eyewitnesses or there were additional reasons for ascribing confidence in their credibility.
To hold that a warrantless search could be validly based upon information of a citizen-informer without more would open up the door to untold abuses contrary to the Fourth Amendment guarantee. It would, in our view, be tantamount to "naked suspicion." State v. Waltz, 61 N.J. 83, 87 (1972). "The right to assert must pre-exist the search. Officers cannot search in order to arrest, nor arrest because of the product of the search." State v. Doyle, 42 N.J. 334, 342 (1964).
We have referred to State v. Gillman, supra, n. 3, as a case where the police acted upon information supplied by other law-enforcement officers. The court therein noted, in quoting from People v. Horowitz, 21 N.Y.2d 55, 286 N.Y.S.2d 473, 233 N.E.2d 453 (Ct. App. 1967), that *113 even where reports of criminal activity are received from such sources there is a concomitant requirement that the police "as a whole [must be] in possession of information sufficient to constitute probable cause to make the arrest." Gillman, supra, 113 N.J. Super. at 305.
In sum, in order for the information supplied by a citizen-informer to be sufficient for the finding of probable cause to make a warrantless search, all other requirements being present, it must appear that the informer's information was obtained from personal observation or knowledge, or there must be some reasonable verification thereof.
In the instant case, tested by these rules and looking at the sequence of events in a commonsense way (State v. Kasabucki, supra, 52 N.J. 110, 117 (1968)), we conclude that on this record the police did not have sufficient probable cause to make a search. Accordingly, the order denying defendant's motion to suppress is reversed, the conviction is vacated and the matter remanded to the trial court for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Quite obviously the State never attempted to sustain its burden of demonstrating knowledge on the part of defendant that he had a choice of refusing to comply with the detective's demand that he surrender the paper. State v. Johnson, 68 N.J. 349, 354 (1975).
[2] "* * * I honestly would feel that if he searched this individual that there might have been a problem."
[3] We do not regard such investigator as being in the same class as that of a law-enforcement officer. Cf. State v. Kelly, 61 N.J. 283 (1972); State v. Kasabucki, 52 N.J. 110 (1968); State v. Gillman, 113 N.J. Super. 302 (App. Div. 1971).