**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0042-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RYAN S. ROBERTS,

     Defendant-Appellant.

_____

          Argued January 7, 2019 – Decided February 5, 2019

          Before Judges Messano and Gooden Brown.

          On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 15-09-1089.

          Marissa J. Costello argued the cause for appellant (Costello & Whitmore, attorneys; Marissa J. Costello, on the brief).

          Jennifer B. Paszkiewicz, Assistant Prosecutor, argued the cause for respondent (Scott A. Coffina, Burlington County Prosecutor, attorney; Jennifer B. Paszkiewicz, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to invalidate the motor vehicle stop that led to his arrest, defendant appealed to the Law Division the denial of his application for admission into the Pre-Trial Intervention Program (PTI).  When his PTI appeal was denied, he entered a negotiated conditional guilty plea to fourth-degree operating a motor vehicle during a period of license suspension, N.J.S.A. 2C:40-26(b),[1] and was sentenced to a one-year probationary term, conditioned upon serving 180 days in the county jail.[2]

Defendant now appeals from the judgment of conviction raising the following points for our consideration:

> I.  THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS[.]
>
> . . . .

---

[1] N.J.S.A. 2C:40-26(b) provides "[i]t shall be a crime of the fourth degree to operate a motor vehicle during the period of license suspension in violation of [N.J.S.A.] 39:3-40, if the actor's license was suspended or revoked for a second or subsequent violation of [N.J.S.A.] 39:4-50 [(DWI)] or . . . [N.J.S.A. 39:4-50.4a (refusal to submit to breath testing)]."  Under N.J.S.A. 2C:40-26(c), there is "a fixed minimum sentence of not less than 180 days" without parole for a conviction under N.J.S.A. 2C:40-26(b).

[2] When defendant was arrested, he was also issued motor vehicle summonses for driving while revoked, N.J.S.A. 39:3-40; unlicensed driver, N.J.S.A. 39:3-10; and failure to install an ignition interlock device, N.J.S.A. 39:4-50.19.  At sentencing, he received a concurrent sentence for driving while revoked.  The sentences were stayed pending appeal.

II. THE PTI DIRECTOR'S DENIAL OF DEFENDANT'S APPLICATION TO PTI WAS A PATENT AND GROSS ABUSE OF DISCRETION[.]

. . . .

[A]. THE DIRECTOR ABUSED HIS DISCRETION BY RELYING UPON INAPPROPRIATE CRITERIA AND FAILING TO CONSIDER REQUIRED CRITERIA IN DENYING DEFENDANT ADMISSION TO PTI[.]

[B]. THE DIRECTOR'S ABUSE OF HIS DISCRETION WAS PATENT AND GROSS AS IT SUBVERTS THE GOALS UNDERLYING PTI (NOT ARGUED BELOW)[.]

[C]. THE PROSECUTOR FAILED TO MAKE AN INDEPENDENT EVALUATION OF THE DEFENDANT FOR PTI AND RELIED ON THE PTI DIRECTOR'S INAPPROPRIATE CONSIDERATION OF CONVICTIONS THAT ARE ESSENTIAL TO SUPPORT A VIOLATION OF N.J.S.[A.] 2C:40-26[(B).]

We have considered these arguments in light of the record and applicable legal principles. We reject each of the points raised and affirm.

3

Medford Lakes Patrolman Andrew Hoyer was the sole witness who testified for the State at the suppression hearing conducted on June 1, 2016. After the hearing, Judge Philip E. Haines found "the officer's testimony credible" and made the following findings of fact in a June 14, 2016 written decision:

> On February 22, 2015, retired police officer Dennis Nelson visited the Medford Lakes Police Department to report that his former son-in-law, [defendant] Ryan Roberts . . . , was driving on a suspended license. Nelson further advised that [d]efendant would be dropping his kids off at his ex-wife's house that evening. A Medford Lakes Sergeant then sent Officer Hoyer to patrol that area.
>
> Officer Hoyer described the area as a "very small street" with "not much traffic at all." There were no moving cars on the street at that time. Shortly after 7:30 p.m., Officer Hoyer observed a car pull up to Nicole Roberts' house to drop off children. Thereafter, Nicole Roberts called 911 to report that [d]efendant was driving on a suspended license. She also provided her address, description of [d]efendant's vehicle, and the direction she believed it to be traveling. Officer Hoyer was dispatched to pull the vehicle over. He then located the vehicle and conducted a stop on Lenape Trail. Officer Hoyer confirmed that [d]efendant's license was suspended and took him into custody on an outstanding warrant.

In his legal analysis, citing State v. Carty, 170 N.J. 632, modified by 174 N.J. 351 (2002), and State v. Pineiro, 181 N.J. 13 (2004), the judge explained

A-0042-17T3

that "[a] police officer may conduct a motor vehicle stop if he possesses a reasonable and articulable suspicion that an offense has been committed[,]" and "[t]he State must establish by a preponderance of the evidence that the officer possessed sufficient information to give rise to this level of suspicion." The judge acknowledged that, under State v. Amelio, 197 N.J. 207 (2008), "[i]n some circumstances[,] an informant's tip may assist the court in evaluating whether the police officer had reasonable suspicion to conduct an investigatory stop." According to the judge, while "[a]n anonymous tip alone is rarely sufficient to establish a reasonable and articulable suspicion of criminal activity[,]" on the other hand, "'when an informant is an ordinary citizen, New Jersey courts assume that the informant has sufficient veracity and require no further demonstration of reliability[,]' State v. Stovall, 170 N.J. 346 (2002)."

In denying defendant's motion to suppress, the judge determined that "[b]ased on the totality of the circumstances, Officer Hoyer had a reasonable and articulable suspicion that [d]efendant was driving on a suspended license to justify the stop." The judge rejected defendant's contrary arguments, and found that inasmuch as Officer Nelson and Nicole Roberts were ordinary citizens who identified themselves to police, their tips were sufficiently reliable to establish

the requisite level of suspicion of criminal activity to support the motor vehicle

stop. The judge stated:

> Defendant argues that Nicole Roberts, and her father, had an ulterior motive to have him arrested based on an on-going custody battle. This does not diminish the reliability of the information they provided. Had it been false, either could have [been] charged with providing false information to law enforcement authorities. The analysis would differ had the information come from an anonymous source.

After the judge entered a memorializing order on June 14, 2016, denying

his suppression motion, defendant appealed the denial of his PTI application.

The Criminal Case Manager/PTI Director had rejected defendant's PTI

application in a letter dated May 16, 2016,[3] for the following reasons:

> The crime the defendant is charged with, [N.J.S.A.] 2C:40-26(b), is a crime that the Legislature felt should carry a mandatory term of incarceration if convicted. Additionally of concern is that prior sanctions and license suspensions did little to deter the on-going illegal act of driving without a valid license. . . .
>
> . . . The defendant's lengthy driving abstract, . . . reports at least seven [occasions] . . . when his license was suspended. He has accrued several infractions on his driving history. This crime would carry a mandatory term of incarceration if [he is] convicted. Prior sanctions and license suspensions did little to deter the [on-going] illegal act of driving without a valid license. He demonstrates little to no regard for

---

[3] The letter is mistakenly dated May 16, 2015.

the laws set [in place] regarding the [privileges] of carrying a license.

Likewise, in a letter dated August 24, 2016, the prosecutor advised defendant that after "review[ing] the materials," she was "unable to consent to defendant's entry [in]to the PTI program."

Following oral argument, on September 22, 2016, Judge Haines issued a written decision, denying defendant's appeal and rejecting his PTI application. Citing State v. Bender, 80 N.J. 84, 93 (1979), the judge explained that "[i]n order to establish an abuse of discretion," defendant had to show that the PTI Director's decision "was not premised upon consideration of all relevant factors," "was based upon a consideration of irrelevant or inappropriate factors," or "amounted to a clear error in judgment." The judge concluded that defendant failed to meet "the burden of establishing abuse of discretion."

First, the judge rejected defendant's argument "that the PTI [D]irector's acknowledgement of the mandatory term of incarceration was improper." On the contrary, the judge found that "a mandatory term of incarceration" was a proper "consider[ation] in making a decision about a PTI application" because "the nature" and "seriousness of an offense" were "key consideration[s]." See N.J.S.A. 2C:43-12(e)(1) (listing "[t]he nature of the offense" as one of the factors "[p]rosecutors and program directors shall consider in formulating their

A-0042-17T3

recommendation" on PTI applications); see also State v. Carrigan, 428 N.J. Super. 609, 613-14 (App. Div. 2012) (noting that the public need for prosecution of violations of N.J.S.A. 2C:40-26 by a mandatory 180 days of incarceration without parole has been prompted "by reports of fatal or serious accidents that had been caused by recidivist offenders with multiple prior DWI violations, who nevertheless were driving with a suspended license").

The judge also explained that the mandatory term of incarceration "did not function as a presumption against PTI," requiring defendant "to show compelling reasons" why he should be admitted into the program. To support his determination, the judge pointed out that the PTI Director's rejection letter "did not mention anything about a presumption against his admission nor did it state that he failed to show compelling reasons[.]" See State v. Caliguiri, 158 N.J. 28, 43 (1999) (explaining that rejection based solely on the nature of the offense is appropriate only if the offender fails to rebut the presumption against diversion for certain offenders pursuant to N.J.S.A. 2C:43-12(b)(2) by establishing "compelling reasons" as permitted under Rule 3:28, Guideline 3(i)).

Next, the judge rejected defendant's argument that the PTI Director's consideration of his driving record was improper. In addressing this argument, the judge recounted that upon conducting the instant motor vehicle stop, the

A-0042-17T3

responding officer discovered that defendant "had an outstanding warrant from Egg Harbor Township" and "[defendant's] driving privileges were suspended due to [his] failure to pay insurance surcharge[s]." The judge continued:

> Police learned afterwards that the defendant's license had been suspended as a result of his third violation of N.J.S.A. 39:4-50, [d]riving [w]hile [i]ntoxicated . . . . The underlying DWI convictions occurred in October 1999 ([d]riving [w]hile [i]ntoxicated, N.J.S.A. 39:4-50), June 2011 ([d]riving [w]hile [i]ntoxicated and [r]efusal to [s]ubmit to [b]reath [t]esting, N.J.S.A. 39:4-50.4a), and July 2013 ([r]efusal to [s]ubmit to [b]reath [t]esting).

Relying on State v. Negran, 178 N.J. 73, 83-85 (2003), the judge explained that

> a defendant's driving history can be properly considered in determining whether a particular defendant has engaged in a "pattern of anti-social behavior," so long as there is a substantive and temporal relationship between the driving record and the instant offense. . . . The mere fact that two of the three DWI convictions that predicate the present charge occurred within the last five years is clearly relevant here, as well as the defendant's other failures to comply with motor vehicle sanctions as detailed in his driver's abstract.

See Negran, 178 N.J. at 84 (concluding that "an applicant's past driving record might be relevant" in considering "[t]he extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior[,]" one of the

factors "[p]rosecutors and program directors shall consider in formulating their recommendation" on PTI applications pursuant to N.J.S.A. 2C:43-12(e)(8)).

Finally, the judge rejected defendant's argument that the PTI Director "did not consider relevant factors because the rejection letter did not discuss every factor from N.J.S.A. 2C:43-12 and [Rule] 3:28." Citing State v. Wallace, 146 N.J. 576, 584 (1996), the judge acknowledged "New Jersey courts recognize a presumption that a program director considered all relevant factors[,]" and concluded that "defendant ha[d] not provided any evidence to rebut that presumption." This appeal followed.

We first address the denial of defendant's suppression motion. Our "review of a motion judge's factual findings in a suppression hearing is highly deferential." State v. Gonzales, 227 N.J. 77, 101 (2016). In our review, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014). We defer "'to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to the trial

court's legal conclusions or interpretation of the legal consequences that flow from established facts. Thus, our review in that regard is de novo. State v. Watts, 223 N.J. 503, 516 (2015).

Applying that standard of review, we discern substantial credible evidence in the record to support the judge's findings of fact and we agree with the judge's legal determination that the motor vehicle stop was supported by the requisite level of suspicion. "A lawful stop of an automobile must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed." Carty, 170 N.J. at 639-40 (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)). The burden is on the State to demonstrate by a preponderance of the evidence that it possessed sufficient information to give rise to the required level of suspicion. Pineiro, 181 N.J. at 19-20.

The reasonable suspicion necessary to justify an investigatory stop requires "some minimal level of objective justification for making the stop." State v. Nishina, 175 N.J. 502, 511 (2003) (quoting United States v. Sokolow, 490 U.S. 1, 17 (1989)). "The officer 'must be able to "point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the intrusion.'" State v. Arthur, 149 N.J. 1, 8 (1997) (quoting State v. Thomas, 110 N.J. 673, 678 (1988)). In some circumstances,

the officer may rely on an informant's tip to formulate the reasonable suspicion needed to justify the stop. See Amelio, 197 N.J. at 212.

While "[a]n anonymous tip, standing alone, is rarely sufficient to establish a reasonable articulable suspicion of criminal activity[,]" State v. Rodriguez, 172 N.J. 117, 127 (2002) (citing Alabama v. White, 496 U.S. 325, 329 (1990)), "'[a] report by a concerned citizen' or a known person is not 'viewed with the same degree of suspicion that applies to a tip by a confidential informant' or an anonymous informant," Amelio, 197 N.J. at 212-13 (alteration in original) (quoting Wildoner v. Borough of Ramsey, 162 N.J. 375, 390 (2000)). Indeed, "[t]here is an assumption grounded in common experience that such a person is motivated by factors that are consistent with law enforcement goals[,]" State v. Davis, 104 N.J. 490, 506 (1986), and "[w]hen an informant is an ordinary citizen, New Jersey courts assume that the informant has sufficient veracity and require no further demonstration of reliability[.]" Stovall, 170 N.J. at 362.

Applying these principles, we agree with Judge Haines that Officer Hoyer properly relied on Officer Nelson's and Nicole Roberts' tips, in addition to his own observations, to form the requisite reasonable suspicion to justify the stop. Defendant argues that "[u]nder the totality of the circumstances . . . , in light of the acrimonious relationship between the [informants] and . . . defendant, and

12

the officer's inability to form an independent determination that a motor vehicle or criminal offense had been committed, Officer Hoyer's stop" of defendant "was unconstitutional[,]" particularly since, unlike Amelio, the informants were not victims. We disagree.

In Amelio, the defendant's seventeen-year-old daughter

> first called the police for assistance because of a domestic disturbance with her father. She then called back to report that her father left the house driving his car while drunk, and described the vehicle, including the license tag number. In both instances, the caller provided her name and address to the police.
>
> [197 N.J. at 215.]

Our Supreme Court concluded that "[t]he details of those reports by a known citizen gave the police reasonable and articulable suspicion to stop and investigate the conduct of defendant." Ibid. In finding no constitutional violation, the Court reasoned that "[t]he seventeen-year-old was 'in the nature of a victim or complainant, whose information could be taken at face value irrespective of other evidence concerning [her] reliability.'" Id. at 213 (second alteration in original) (quoting State v. Lakomy, 126 N.J. Super. 430, 436 (App. Div. 1974)). Moreover, "the caller was a known person, who exposed herself to criminal prosecution if the information she related to dispatch was knowingly false." Id. at 214. See N.J.S.A. 2C:33-3(a) (criminalizing knowingly and falsely

reporting emergencies). The rationale of <u>Amelio</u> applies to this case with even greater force because of the added corroboration gleaned from Officer Hoyer's own observations in conjunction with two separate and independent informant tips.

Turning to the denial of defendant's PTI appeal, admission into the PTI program is based on a favorable recommendation from the PTI director and the consent of the prosecutor. <u>State v. Nwobu</u>, 139 N.J. 236, 246 (1995). In determining whether to recommend or consent to admission, the PTI director and the prosecutor must consider seventeen factors listed in N.J.S.A. 2C:43-12(e) and the <u>Rule</u> 3:28 Guidelines.[4] The statutory list is not exhaustive and additional relevant factors may also be considered. <u>Negran</u>, 178 N.J. at 84; <u>State v. Brooks</u>, 175 N.J. 215, 226-27 (2002), <u>overruled on other grounds by</u> <u>State v. K.S.</u>, 220 N.J. 190 (2015).

Because of the "interplay" between the PTI director and the prosecutor, "completely distinct reasoning" is not required and "the prosecutor's reliance on the program director's statement of reasons is proper." <u>Nwobu</u>, 139 N.J. at 251.

---

[4] <u>Rule</u> 3:28 has since been repealed in part and reallocated to <u>Rules</u> 3:28-2, -3, -5, -6, -7, -8, and -10, effective July 1, 2018. Pressler & Veniero, <u>Current N.J. Court Rules</u>, <u>R.</u> 3:28 (2019). Because these new Rules were not in effect when defendant's application was considered by the PTI Director, prosecutor, and trial court, we apply the standards in effect at that time.

"The statement of reasons must then be evaluated for its adequacy."  Ibid.
"Judicial review serves only to check the 'most egregious examples of injustice
and unfairness.'"  Negran, 178 N.J. at 82 (quoting State v. Leonardis, 73 N.J.
360, 384 (1977)).  For that reason, "[t]he scope of judicial review of a decision
to reject a PTI application is 'severely limited[,]'" State v. Hoffman, 399 N.J.
Super. 207, 213 (App. Div. 2008) (quoting Negran, 178 N.J. at 82), and a
"[d]efendant generally has a heavy burden when seeking to overcome a . . .
denial of his admission into PTI[.]"  State v. Watkins, 193 N.J. 507, 520 (2008)
(citing Nwobu, 139 N.J. at 246-47).

A reviewing court may order a defendant into PTI over a prosecutor's
objection only if the defendant "clearly and convincingly establish[es] that the
prosecutor's refusal to sanction admission into the program was based on a
patent and gross abuse of . . . discretion."  Wallace, 146 N.J. at 582 (second
alteration in original) (quoting Leonardis, 73 N.J. at 382).  An abuse of
discretion is manifest if defendant shows that a prosecutorial veto "'(a) was not
premised upon a consideration of all relevant factors, (b) was based upon
consideration of irrelevant or inappropriate factors, or (c) amounted to a clear
error in judgment.'"  Id. at 583 (quoting Bender, 80 N.J. at 43).  In order for such
an abuse of discretion to rise to the level of patent and gross, "it must further be

15

shown that the prosecutorial error complained of will clearly subvert the goals underlying [PTI]." Bender, 80 N.J. at 93. Absent evidence to the contrary, a reviewing court must assume the prosecutor considered all relevant factors in reaching its decision. State v. Dalglish, 86 N.J. 503, 509 (1981).

Applying these principles, we discern no abuse of discretion in the denial of defendant's PTI application, let alone one that is patent and gross. Defendant argues the Director relied on "the probability of mandatory incarceration upon conviction" and "defendant's driving abstract," and failed to consider mitigating factors, such as steady employment, no prior criminal convictions, and no evidence of alcohol use at the time of the stop. Defendant asserts these considerations are proof that the decision was based on "inappropriate factors" and "not premised upon a consideration of all relevant factors," resulting in the subversion of the goals of PTI and "an abuse of his discretion." We disagree and affirm substantially for the reasons expressed in Judge Haines' cogent written decision. We also reject defendant's argument that the prosecutor failed to conduct the required "independent evaluation of the defendant's amenability

and suitability for PTI."[5]  "[T]he prosecutor's reliance on the program director's statement of reasons [was] proper."  Nwobu, 139 N.J. at 251.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5]  In her reply brief and during oral argument before the judge, the prosecutor expounded on her reliance on the PTI Director's reasons for rejecting defendant's application, noting that the offense carried a mandatory period of incarceration, defendant violated a recidivist statute, defendant had not been deterred by less restrictive means, and defendant disregarded the law and orders of the court by failing to implement necessary countermeasures, such as installing the ignition interlock device after his 2011 conviction.