**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0627-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HAKIEM K. WADUD,

    Defendant-Appellant.

_____

> Submitted February 26, 2020 – Decided April 8, 2020
>
> Before Judges Koblitz and Gooden Brown.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 17-06-0847.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (James K. Smith, Jr., Assistant Deputy Public Defender, of counsel and on the brief).
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Catlin A. Davis, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence seized from his person during a warrantless search, defendant entered a negotiated guilty plea to one count of first-degree kidnapping, N.J.S.A. 2C:13-1(b), and one count of first-degree robbery, N.J.S.A. 2C:15-1. The kidnapping count was amended to incorporate three victims, and the robbery count was amended to incorporate four victims, all of whom were encompassed in the fourteen-count indictment returned against defendant.[1] The charges stemmed from defendant robbing four victims at gunpoint during a four-hour crime spree spanning two days and two towns. Defendant accosted two of the victims in a car and demanded that they drive him to the Wawa in Neptune, where he attempted to withdraw money from the ATM account of one of the victims. Defendant accosted a third victim in his car and ordered him to drive defendant to the same Wawa. Defendant was ultimately apprehended when he returned to the Wawa, where he was subjected to an investigative detention.

---

[1]  The indictment charged defendant with three counts of first-degree kidnapping, N.J.S.A. 2C:13-1(b); four counts of first-degree armed robbery, N.J.S.A. 2C:15-1; four counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1).

Defendant was sentenced in accordance with the plea agreement to an aggregate term of eighteen years, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and the remaining counts of the indictment were dismissed. He now appeals from the July 31, 2018 judgment of conviction, raising the following points for our consideration:

> POINT I
>
> THE STOP AND DETENTION OF DEFENDANT, DONE WITHOUT REASONABLE SUSPICION, VIOLATED THE FOURTH AMENDMENT.
>
> POINT II
>
> THE DEFENDANT'S [EIGHTEEN]-YEAR SENTENCE, BASED UPON THE JUDGE'S FINDING THAT NO MITIGATING FACTORS WERE PRESENT, WAS EXCESSIVE, AND SHOULD EITHER BE REDUCED OR REMANDED TO THE TRIAL COURT FOR ADDITIONAL FINDINGS.

We affirm.

At the hearing on the suppression motion, Bradley Beach Police Officer Andrew Redmond was the sole witness. Redmond testified that at about 10:45 p.m. on November 13, 2016, while he was on "regular routine patrol," he received a police dispatch about "an armed robbery with [a] gun" at "the Wawa" on "Route 33 and 35 in Neptune," which was "[l]ess than a mile" away from his

3

location. The dispatch described the robber as wearing "[g]ray sweatpants, [a] black sweatshirt, and a black hat." After "checking the area for the [suspect]," with negative results, Redmond "continued routine patrol."

Later, at about 2:40 a.m. the following morning, Redmond, who "was in . . . full police uniform," went to the same Wawa "to get something to eat." Upon entering the store, he noted that the "three people" working there "were talking about the robbery that [had] occurred earlier that night." When Redmond went to the cashier to pay for his food, a person walked into the store who was later identified as defendant. Upon seeing defendant, the cashier "seemed excited and advised [Redmond] that [he] was the subject that committed the robbery earlier that night." Redmond asked the cashier "if she was joking," to which she responded that she was not, and "immediately" walked over "to her manager and began . . . talk[ing]" to him.

At that point, defendant approached "the cashier and the manager" at "the back of the store" and started talking to the cashier as if he was acquainted with her, explaining to her that "he was home from college." Redmond, who was standing "about [ten] feet" away from defendant at the time, observed that defendant's clothing precisely "matched the description" reported earlier in the police dispatch. As a result, Redmond "immediately radioed [his] headquarters

A-0627-18T4

to advise them to send Neptune units." While Redmond made the audible radio transmission, defendant, who had approached the cash register to purchase a pack of cigarettes, abandoned his purchase and "walk[ed] around the store and trie[d] to exit through the entrance door," avoiding Redmond in the process.

Redmond "immediately exited through the exit doors to cut off [defendant's] path." Once Redmond confronted defendant in the enclosed "glass vestibule," just beyond the exit doors, he "advised [defendant] to stop." Redmond intended "to detain [defendant] until Neptune arrived." When defendant asked why he was stopping him, Redmond responded "that Neptune needed to speak with him." However, instead of complying with Redmond's order, defendant tried "to push past [Redmond]," by "pushing [Redmond's] arms down . . . to push [Redmond] out of the way." As defendant became "very irate," Redmond was concerned that defendant "might still have a gun on him."

Although Redmond had grabbed defendant's arm and was holding defendant "[u]p against the glass in the vestibule," he was unable to control defendant by himself. At that point, an off-duty sheriff's officer entered the store and assisted Redmond in handcuffing defendant. After handcuffing defendant, Redmond "immediately did a quick pat-down search" of defendant "[f]or safety" and "felt a hard object in his right front pocket of his sweatshirt which felt like

a gun." After seizing the object, which turned out to be "a small revolver," Redmond "passed [defendant] off to a Neptune unit" that had arrived at the scene. According to Redmond, the entire encounter with defendant lasted "[three] to [four] minutes tops." Redmond later learned that Wawa had surveillance cameras inside the store that had captured the entire encounter on video. The video footage, which was played during the hearing, was authenticated by Redmond as accurately depicting what transpired in the Wawa.

Following the hearing, the judge denied defendant's motion to suppress the revolver. In an oral decision, the judge made factual findings consistent with Redmond's testimony, which was corroborated by the surveillance footage,[2] applied the applicable legal principles, and concluded that Redmond had an objectively reasonable suspicion to justify an investigative detention, which led to a valid search contemporaneous with a valid arrest. The judge explained:

> In this case, Neptune Township Police Department dispatched the description of the suspect involved in the incident. Officer Redmond had responded to the Wawa location [in] which the alleged

---

[2] Although the judge did not explicitly state he found Redmond's unrebutted testimony credible, there is ample evidence to support the judge's implicit findings. See Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475 (1988) (finding "substantial evidence to support the trial court's implicit finding[s]" where such findings "are 'supported by adequate, substantial and credible evidence.'" (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974))).

robbery occurred. During his time there, the Wawa employee appeared to be upset . . . . [o]nce the individual later determined to [be] defendant had entered the store. Upon entry, the individual appeared . . . to know her by saying, . . . I am home from college . . . . or words of that effect. It was at this point that Officer Redmond noted that the individual fit the exact description of what was dispatched by Neptune police, gray pants, black sweatshirt, black hat. Once Officer Redmond utilized his radio, the individual attempted to leave the store.

Each individual act alone may not give rise to the level of reasonable suspicion required, however, . . . it is the combination of these facts, the strange behavior of the defendant, the notable distress of the manager, employee and notably the return to the scene and matching description that give rise to the minimal level of justification for making the stop. The initial stop and seizure of the defendant was valid. Further, the subsequent arrest leading to the search of his person was valid.

At the subsequent sentencing hearing, based on defendant's "extensive prior record," which included "a juvenile history," "a significant municipal court history," and, despite his young age, "a significant adult criminal history,"[3] his "underlying substance [abuse] and addiction issues," and the "psychological[]" harm inflicted "on the victims," the judge found aggravating factors three, six, and nine applied. See N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will

_____

[3] At age twenty-six, defendant had three prior indictable convictions, two drug related and one weapons possession offense.

commit another offense"); N.J.S.A. 2C:44-1(a)(6) ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted"); N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law").  Acknowledging the prosecutor's comments that "fortunately, no projectiles emerged from th[e] gun," despite defendant "pull[ing] the trigger" on "several occasions," the judge noted "[i]t was a blessing that [it] didn't turn out far worse that day . . . because it was serious conduct and it did threaten serious harm." See State v. Fuentes, 217 N.J. 57, 79 (2014) ("[D]emands for deterrence are strengthened in direct proportion to the gravity and harmfulness of the offense." (alteration in original) (quoting State in Interest of C.A.H. & B.A.R., 89 N.J. 326, 337 (1982))).

The judge rejected defendant's argument that mitigating factors four and eleven applied.  See N.J.S.A. 2C:44-1(b)(4) ("[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"); N.J.S.A. 2C:44-1(b)(11) ("[t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents").  Instead, the judge found no mitigating factors.  The judge dismissed defendant's plea for a lesser sentence so that he could be "a father to [his] newborn son" or a "productive" person in the eyes of his "terminally ill" "grandmother." See State

8

v. Dalziel, 182 N.J. 494, 505 (2005) (finding mitigating factor eleven unsupported by the record because the defendant "has never lived with or supported his fiancée and child.").

While the judge acknowledged that defendant "was under the influence of a tremendous amount of drugs and alcohol," the judge found that defendant's intoxication "[did] not . . . r[i]se to [the] level of a defense" nor "warrant [m]itigating [f]actor [four]" because his intoxication did not "excuse the conduct." See State v. Setzer, 268 N.J. Super. 553, 567 (App. Div. 1993) ("Even if it were established that defendant was in fact intoxicated at the time of the crime, the trial court would not be required to consider such intoxication as a mitigating factor."). The judge concluded that although "the aggravating factors outweigh[ed] the mitigating factors," and notwithstanding the fact "that any one of the[] kidnappings . . . carried . . . [a maximum exposure of thirty] years in New Jersey state prison," the plea agreement allowing a maximum of eighteen years was "appropriate" and would be followed. The judge entered a conforming judgment of conviction and this appeal followed.

On appeal, defendant first argues that while "the officer could have conducted a field inquiry and asked defendant whether he had been in the store earlier that night and whether he was involved in the robbery, he simply did not

9

have the reasonable suspicion necessary to stop defendant and detain him until the Neptune police arrived." Thus, according to defendant, the judge erred in ruling otherwise.[4] We disagree.

Our scope of review of a trial court's decision on a suppression motion is circumscribed. State v. Robinson, 200 N.J. 1, 15 (2009). We defer to the trial court's factual and credibility findings, "so long as those findings are supported by sufficient credible evidence in the record." Ibid. (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Deference is afforded because the "findings of the trial judge . . . are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Reece, 222 N.J. 154, 166 (2015) (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). Thus, we disregard a trial court's factual and credibility findings "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Boone, 232 N.J. 417, 426 (2017) (quoting Elders, 192 N.J. at 244). On the other hand, "we owe no deference to conclusions of law . . . , which we instead review de novo." Ibid. (citing State v. Watts, 223 N.J. 503, 516 (2015)).

---

[4] Defendant only challenges the investigative detention, and does not challenge whether Redmond had "probable cause to make an arrest" "once defendant pushed [him]."

A police officer has a right "to conduct a brief, investigatory stop." State v. Morrison, 322 N.J. Super. 147, 151-52 (App. Div. 1999); see also Terry v. Ohio, 392 U.S. 1, 20-21 (1968). An investigative or so-called Terry stop does not require probable cause to believe a person has committed or is about to commit an offense. State v. Nishina, 175 N.J. 502, 510-11 (2003). Rather, "[a] police officer may conduct an investigatory stop if, based on the totality of the circumstances, the officer ha[s] a reasonable and particularized suspicion to believe that an individual has just engaged in, or was about to engage in, criminal activity." State v. Stovall, 170 N.J. 346, 356 (2002) (citing Terry, 392 U.S. at 21).

> The . . . "particularized suspicion" of criminal activity must be based upon the law enforcement officer's assessment of the totality of circumstances with which he is faced. Such observations are those that, in view of [the] officer's experience and knowledge, taken together with rational inferences drawn from those facts, reasonabl[y] warrant the limited intrusion upon the individual's freedom.
>
> Moreover, even if the initial stop is deemed constitutional, a further inquiry must be made to determine whether the subsequent scope of the seizure was justified by the particular facts and circumstances of the case. An important factor to consider is whether the officer used the least intrusive investigative techniques reasonably available to verify or dispel his suspicion in the shortest period of time reasonably possible.

A-0627-18T4

[State v. Davis, 104 N.J. 490, 504 (1986).]

In turn, "in determining the lawfulness of an investigatory stop, a reviewing court must 'evaluate the totality of circumstances surrounding the police - citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions.'" State v. Chisum, 236 N.J. 530, 546 (2019) (quoting State v. Privott, 203 N.J. 16, 25-26 (2010)). See also United States v. Cortez, 449 U.S. 411, 417 (1981).

From our review of the record, we conclude the totality of the circumstances supports the judge's conclusion that a reasonable articulable suspicion existed to stop defendant at the Wawa store based on the earlier police dispatch that there had been an armed robbery there, the fact that defendant's clothing precisely matched the reported description of the robber's clothing, the cashier identifying defendant as the robber, and defendant's evasive actions after Redmond radioed for assistance. See State v. Reynolds, 124 N.J. 559, 569 (1991) (finding the police had "reasonable suspicion to stop [the defendant] on the morning of the crime" based on "defendant's proximity to the crime in both time and space and . . . his similarity to the general description of the suspect"); State v. Williams, 317 N.J. Super. 149, 157 (App. Div. 1998) ("An ordinary

citizen may be regarded as trustworthy, and information imparted by him to a police officer concerning a criminal event 'would not especially entail further exploration or verification of his personal credibility or reliability before appropriate police action is taken.'" (quoting State v. Lakomy, 126 N.J. Super. 430, 435 (App. Div. 1974))); State v. Basil, 202 N.J. 570, 586 (2010) ("[W]hen a tip is made in-person, an officer can observe the informant's demeanor and determine whether the informant seems credible enough to justify immediate police action without further questioning." (alteration in original) (quoting United States v. Palos-Marquez, 591 F. 3d 1272, 1275 (9th Cir. 2010))).

Indeed, the "whole picture" underscored Redmond's belief that defendant had "just engaged in . . . criminal activity." Stovall, 170 N.J. at 356, 361 (citation omitted). Moreover, the limited scope of the seizure was justified by the circumstances of the case. Thus, we are satisfied that the judge's factual findings, based on the judge's assessment of Redmond's credibility and the corroborating video footage, are substantially supported by sufficient credible evidence in the record, and the judge's legal conclusions are sound.

Further, Redmond was well within his powers under Terry to conduct the pat-down search of defendant. See State v. Richards, 351 N.J. Super. 289, 299 (App. Div. 2002) (explaining that once stopped, an officer is permitted to

"conduct a reasonable search for weapons if he is 'justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others'" (quoting Terry, 392 U.S. at 24)). Based on the earlier dispatch reporting the commission of an armed robbery, it was objectively reasonable for Redmond to suspect defendant was armed with a firearm. Given the totality of the circumstances presented, we therefore conclude the pat-down search was lawful. See State v. Roach, 172 N.J. 19, 27 (2002).

Next, defendant challenges his sentence as excessive, arguing "the judge erred in basing the [eighteen]-year sentence solely upon defendant's prior criminal record without giving serious consideration to the mitigating factors." "Appellate review of the length of a sentence is limited." State v. Miller, 205 N.J. 109, 127 (2011). We will

> affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (second alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

14

Additionally, we will presume that "[a] sentence imposed pursuant to a plea agreement is . . . reasonable because a defendant voluntarily '[waived] . . . his right to a trial in return for the reduction or dismissal of certain charges, recommendations as to sentence and the like.'" Id. 70-71 (second alteration in original) (quoting State v. Davis, 175 N.J. Super. 130, 140 (App. Div. 1980)).

Applying this deferential standard of review, we find defendant's arguments to be without merit. We discern no abuse of discretion or error in judgment in imposing a sentence consistent with the plea agreement, ample support for the aggravating factors found and rejection of the purported mitigating factors, and nothing so unreasonable about the sentence as to shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0627-18T4